UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-24013-DPG

ROBERT DOYLE, individually and on
behalf of all others similarly situated,

       Plaintiff,

vs.

FLORIDA HEALTH SOLUTION, CORP.,
a Florida Corporation,

       Defendant.

_____/

## DEFENDANT'S MOTION TO VACATE DEFAULT

Defendant Florida Health Solution, Corp. ("**Florida Health**"), by counsel and pursuant to Rule 55, Fed. R. Civ. P., moves this Honorable Court for the entry of an Order vacating the Clerk's Default entered against Florida Health on December 16, 2019 [ECF No. 8].  As set forth below, good cause exists to vacate the default, and this Court should enter the requested Order so the parties can litigate this case on the merits.

## I.     FACTUAL BACKGROUND

1.     On September 27, 2019, Plaintiff filed his Class Action Complaint (the "**Complaint**") [ECF No. 1].

2.     The Complaint generally asserts that Florida Health violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. (the "**TCPA**") by calling Plaintiff Robert Doyle ("**Plaintiff**") without his consent, using an automatic telephone dialing system ("**ATDS**").

3.     Plaintiff apparently served Florida Health with a summons and the Complaint by serving the front desk assistant at the offices of its registered agent on November 14, 2019.  *See*

Return of Service, ECF No. 5; *see also* Affidavit of Miguel San Pedro, General Counsel of Florida Health (hereinafter, the "**San Pedro Affidavit**"), attached hereto as **Exhibit A**, at ¶ 4.

4.      The Clerk of this Court entered a default against Florida Health on December 16, 2019 (the "**Default**") [ECF No. 8].

5.      The Return of Service makes clear that the summons and Complaint were served on the front desk assistant at the offices of Florida Health's registered agent. *Id*.

6.      However, the summons and Complaint were not provided to any officer or agent, or any member of the Florida Health legal or executive team.   Rather, the documents inadvertently were not properly processed through the proper channels sufficient to put Florida Health on notice of service of the summons and Complaint.  *See* San Pedro Affidavit, ¶ 5.

7.      While Florida' Health's representatives do not know exactly where the summons and Complaint ended up after being left with the front desk assistant, Florida Health's general counsel attests that he never received them, and to his knowledge, no member of the Company's legal or executive team ever received them.  *See* San Pedro Affidavit, ¶ 6.

8.      Nevertheless, neither Florida Health, its legal team (who are tasked with handling legal matters for the company), or its executives and officers were aware that the summons and Complaint were served, or that this lawsuit was underway, until the receipt of Plaintiff's Motion for Leave to Conduct a Class Certification and Damages Related Discovery (the "**Motion for Leave**") [ECF No. 9] in the mail.  *See* San Pedro Affidavit, ¶ 7.

9.      The Motion for Leave was apparently sent by U.S. Mail to Florida Health on December 23, 2019.  *See* ECF No. 9; San Pedro Affidavit, ¶ 8.

10.     However, likely due to the intervening Christmas and New Years' holidays, the matter was not brought to the attention of Florida Health's General Counsel until Friday, January 3, 2020, when he received the Motion for Leave in the mail.  *See* San Pedro Affidavit, ¶ 9.

11.     As soon as practicable after Florida Health's general counsel's receipt of the Motion for Leave, the following business day, on Monday, January 6, 2020, Florida Health's General Counsel physically went to the Clerk of Court at the Federal Courthouse in Miami to look at the docket and to inspect the Return of Service.  *See* San Pedro Affidavit, ¶ 10.

12.     That same day, on Monday, January 6, 2020, Florida Health's General Counsel called and emailed counsel for Plaintiff.  *See* San Pedro Affidavit, ¶ 11.

13.     Florida Health's General Counsel and Plaintiff's counsel played "phone tag" for a number of days, but when they finally spoke, Florida Health's General Counsel informed Plaintiff's counsel that Florida Health intended to file a motion to vacate the default as soon as possible and defend the case on the merits.  *See* San Pedro Affidavit, ¶ 12.

14.     On January 7, 2020, Florida Health's General Counsel reached out the undersigned counsel to discuss retaining Akerman LLP to represent Florida Health.  *See* San Pedro Affidavit, ¶ 13.

15.     On January 14, 2020, Florida Health formally retained the undersigned counsel upon the clearance of Akerman LLP's conflicts procedures.  *See* San Pedro Affidavit, ¶ 14.

16.     This Motion was filed as quickly as possible given the circumstances.

## II.    <u>MEMORANDUM OF LAW</u>

### A.    <u>Standard for Vacating Defaults</u>

Rule 55(c), Fed. R. Civ. P., allows a court to set aside an entry of default "for good cause shown."  *Id.*  "'Good cause' is a mutable standard, varying from situation to situation. It is also a

liberal one – but not so elastic as to be devoid of substance." *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). The good cause standard is less stringent than the standard for setting aside a default judgment. *See EEOC v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990). A party seeking to vacate a default "only must make a bare minimum showing to support its claim for relief." *Jones v. Harell*, 858 F.2d 667, 669 (11th Cir. 1988). "Good cause" does not have a precise definition or description… it is a context-dependent determination… [depending] on the particular facts." *Farquharson v. Citibank, N.A.*, 664 Fed. Appx. 793, 797 (11th Cir. 2016). The Court should consider the following factors: (i) whether the default was culpable or willful, (ii) whether setting it aside would prejudice the adversary, and (iii) whether the defaulting party presents meritorious defenses. *Compania,* 88 F.3d at 951. The Court may evaluate other factors if appropriate. *Id.*

The Eleventh Circuit has consistently expressed its "strong preference for deciding cases on the merits—not based on a single missed deadline—whenever reasonably possible." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1332 (11th Cir. 2014); *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003) (explaining that, because of the Eleventh Circuit's "strong policy of determining cases on their merits," the court "views defaults with disfavor"); *Fla. Physician's Ins. Co. v. Ehlers*, 8 F. 3d 780, 783 (11th Cir. 1993) (same). Consistent with that policy, when doubt exists as to whether a default should be vacated, the doubt should be resolved in favor of the defaulting party. *Robinson v. U.S.*, 734 F.2d 735, 739 (11th Cir. 1984); *Leaderstat, LLC v. Abisellan*, 252 F.R.D. 698, 700 (M.D. Fla. 2007) ("Where there are no intervening equities, any doubt should, as a general proposition, be resolved in favor of the movant to the end of securing a trial upon the merits").

Here, good cause exists to vacate the default, as vacating the default would be consistent with the Eleventh Circuit's preference for deciding this case on the merits.  The default was not willful.  Setting aside the default would not prejudice Plaintiff.  And, Florida Health has a number of meritorious defenses -- all as set forth below.

### B.    Good Cause Exists to Vacate the Default

#### 1.    The Default Was Not Willful

A default can be willful where the defaulting party displays "an intentional or reckless disregard for the judicial proceedings." *Compania*, 88 F.3d at 952. Here, no such thing happened. Rather, through inadvertence and mistake, and likely the intervening holiday season, the summons and Complaint got lost and were not routed to the proper person(s).  *See* San Pedro Affidavit, ¶¶ 4-11.  Indeed, Florida Health did not ignore the complaint after it was served.  The law supports vacating a default under these circumstances. *See Jewel v. Fla. Dept. of Rev.*, No. 16-cv-2120-T-36JSS, 2017 WL 1155460, at *2 (M.D. Fla. Mar. 28, 2017) (finding good cause and vacating default where "the summons and complaint were not forwarded to the correct people based on an inadvertent mistake"); *James v. Progress Energy of Fla., Inc.*, No. 11-cv-175-OC-32TBS, 2011 WL 3585816, at *2 (M.D. Fla. Aug. 16, 2011) (finding good cause where entity's legal department received complaint but it was inadvertently not transmitted due to "internal errors"); *Walter v. Blue Cross & Blue Shield Utd.*, 181 F.3d 1198, 1202 (11th Cir. 1998) (finding that a secretary's failure constituted excusable neglect); *Blois v. Friday*, 612 F. 2d 938 (5th Cir. 1980) (holing that a technical error or slight mistake should not deprive the party of an opportunity to present the case on its merits); *Lindell Motors, Inc. v. Morgan*, 727 So. 2d 1112, 1113 (Fla. 2d DCA 1999) (stating, "[a] litigant who timely moves to set aside a default, asserting a credible explanation of human error, is entitled to be heard on the merits").

Florida Health also acted quickly when it learned of the default. *See* San Pedro Affidavit, ¶¶ 8-14. Indeed, the entire process—learning of the lawsuit and the default, clearing conflicts, retaining counsel, investigating the circumstances of the default, gathering facts regarding the merits to ensure the existence of meritorious defenses, and preparing and filing this motion—occurred in only 14 days.

Promptly retaining counsel and seeking to set aside a default further demonstrates a lack of culpability and willfulness. *Bluestar Latin Am., Inc. v. Supercom Ltd.*, No. 17-60900-CIV, 2018 WL 3089319, at *2 (S.D. Fla. Mar. 2, 2018) (Gayles, J.) (vacating default entered nearly 4 months prior, and finding (i) that defendants acted within a reasonable time to vacate the default, (ii) that defendants' failure to timely respond was due to clerical and/or administrative failures, (iii) that defendants' purported defenses were sufficient, and (iv) that no undue prejudice to the Plaintiff would result in vacating the default); *Farquharson v. Citibank, N.A.*, 664 Fed. Appx. 793, 797 (11th Cir. 2016); *Jewel*, 2017 WL 1155460, at *2 (finding prompt action by "filing the [motion to vacate default] within a couple weeks of entry of default and within two months of service"); *Lopez v. Colonial Group of Am. Corp.*, No. 12-cv-22208, 2013 WL 1503260, at *2 (S.D. Fla. Apr. 12, 2013) (Cooke, J.) (finding prompt action by filing motion to vacate default within sixteen days); *Bank of N.Y. v. Brunsman*, 683 F. Supp. 2d 1300, 1303 (M.D. Fla. 2010) (finding defendants promptly filed motion to vacate default "weeks after the default was entered against them"); *Griffin IT Media, Inc. v. Intelligentz Corp.*, No. 07-cv-80535, 2008 WL 162754, at *2 (S.D. Fla. Jan. 16, 2008) (Marra, J.) (finding prompt action where defendant moved to vacate three weeks after learning of the default).

2.      <u>**Setting Aside the Default Would Not Prejudice Plaintiff**</u>

There is no cognizable basis for Plaintiff to assert prejudice based on the facts present here.  Conversely, Florida Health will suffer extreme prejudice if the Default stands, thereby preventing Florida Health from litigating this case on the merits.

"Delay in adjudicating a plaintiff's claim does not qualify as sufficient prejudice under Rule 55.  Instead, [a plaintiff] would have to show that the delay would result in a loss of evidence, increased opportunities for fraud, or discovery difficulties." *Griffin IT Media, Inc.*, 2008 WL 162754, at *3 (quoting *Burrell v. Henderson*, 434 F. 3d 826, 835 (6th Cir. 2006)); *see also Access for the Disabled, Inc. v. Milan Consulting, Inc.*, No. 12-cv-62008, 2013 WL 322517, at *2 (S.D. Fla. Jan. 28, 2013) (Cohn, J.) ("Relatively minor delays or increased litigation expenses do not qualify as actual prejudice that would justify denial of relief under Rule 55"); *Sobkowski v. Wyeth, Inc.*, No. 04-cv-96-OC-10GRJ, 2004 WL 3569703, at *2 (M.D. Fla. June 4, 2004), *report and rec. adopted*, 2004 WL 3569702 (M.D. Fla. July 12, 2004) (holding that setting aside a default would not deprive a plaintiff from a quick resolution of the case, and "is not… the type of prejudice relevant to the Court's inquiry.  Rather the prejudice to be considered is the effect of setting aside the default, if any, on [p]laintiff's *ability to prosecute the case on the merits*") (emphasis in original).

No such prejudice exists here.  This action is still in its preliminary stages, and Florida Health moved to vacate the Default only one month after its entry and roughly six weeks after Florida Health's response to the Complaint would have been due. *See Joseph v. Mortg. Experts of S. Fla., Inc.*, No. 12-cv-23884, 2013 WL 2384247, at *3 (S.D. Fla. May 30, 2013) (Cooke, J.) (finding lack of prejudice where defendant moved to vacate the default "only one and a half months later than the date their response was due"); *Rodriguez v. Brim's Foods, Inc.*, No. 13-cv-

20600, 2013 WL 3147348, at *3 (S.D. Fla. Jun. 19, 2013) (Cooke, J.) (finding lack of prejudice); *Access for the Disabled,* 2013 WL 322517, at *2 (finding lack of prejudice where, among other things, the action was still in its preliminary stages).

### 3.   Florida Health Has Meritorious Defenses to Plaintiff's Complaint

In evaluating whether a party has a meritorious defense, "the likelihood of success is not the measure.  [The] allegations are meritorious if they contain even a hint of suggestion, which, if proven at trial, would constitute a complete defense." *Sobkowski*, 2004 WL 3569703, at *3; *Brown Bark III, L.P. v. Cofresi Torres,* No. 09-cv-22389, 2010 WL 10363, at *4 (S.D. Fla. Jan. 4, 2010) (Moore, J.) (providing a "hint of a suggestion" that defenses have merit is enough); *see also Joseph*, 2013 WL 2384247, at *3 (finding meritorious defense where defaulted party merely contradicted plaintiff's allegations); *Griffin IT Media*, 2008 WL 162754, at *3 (finding meritorious defense where defendant "stated specific facts which it believes makes its contentions more meritorious than [p]laintiff's claims"); *St. Michael Press Pub. Co. v. One Unknown Wreck Believed to be an Unidentified Military & Salvage Frigate of Vessel If Maravilla*, No. 12-cv-81209, 2013 WL 5416973, at *2 (S.D. Fla. Sept. 26, 2013) (Marra, J.) ("the Court need not decide if [an] argument will succeed; rather the Court's review… is limited to determining if [the] allegations are entirely devoid of merit").

All that is necessary to establish a meritorious defense is a presentation or proffer, which if believed, would permit either the Court or the jury to find for the defaulting party. *Cox v. Sprung's Transport & Movers, Ltd.,* 407 F. Supp. 2d 754 (D.S.C. 2006).  Most notably, if a defendant presents defenses which would qualify as affirmative defenses if they had been set forth in a formal answer, the defendant has met its burden to establish meritorious defenses.  *See Suarez v. Portfolio Recovery Assocs., LLC*, No. 11-80778-CIV, 2011 WL 13228565, at *3 (S.D.

Fla. Oct. 13, 2011) (Marra, J.) (vacating default entered against defendant in a TCPA case because, *inter alia*, the defendant "provided legally sufficient affirmative defenses").

It takes only one meritorious defense to vacate a default. *See Dynalectron Corp. (Pac. Div.) v. United States*, 518 F.2d 594, 602 (Ct. Cl. 1975. Florida Health has a number of meritorious defenses to Plaintiff's TCPA causes of action, including, *inter alia*, that (i) the system at issue is not an ATDS – as it requires human intervention to make calls, and does not have the capacity to store or produce telephone numbers to be called using a random or sequential number generator; (ii) Plaintiff consented to the calls; (iii) the TCPA violates the First Amendment to the United States Constitution; (iv) the McCarran-Ferguson Act, 15 U.S.C. § 1012, *et seq.*, precludes the applicability of the TCPA to Florida Health in this instance; (v) Plaintiff lacks standing, having suffered no injury-in-fact, (vi) Count II, alleging a willful and knowing violation of the TCPA, is not a viable cause of action and is subject to dismissal, and (vii) Florida Health did not itself make, transmit or initiate any calls.[1]

### a.     The System at Issue is Not an ATDS

The TCPA prohibits the making of "any call" other than an emergency call "using an automatic telephone dialing system" to "any telephone number assigned to a ... cellular telephone service" without the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). An automatic telephone dialing system, or ATDS, is "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers."  47 U.S.C. § 227(a)(1); 47 C.F.R. § 64.1200(f)(2).  One of the most fundamental defenses available to TCPA defendants is that the system used to make the calls at

---

[1]     These defenses are not intended to be all inclusive.  Florida Health believes that it has additional defenses to Plaintiff's claims, which may be presented after further diligence is conducted by Florida Health into the facts and circumstances surrounding Plaintiff's allegations.

issue is not an ATDS.  Indeed, Plaintiff's causes of action here are entirely dependent on an ATDS finding by this Court.  Florida Health will argue, and show, that the system at issue here is not an ATDS.  <u>First</u>, the system does not have the requisite capacity to be an ATDS.  <u>Second</u>, it requires significant human intervention to make any calls, at all.  Both of these facts remove the system, and Plaintiff's claims, from the scope of the TCPA.

### i. The System at Issue Does Not Have the Capacity to Store or Produce Telephone Numbers to be Called, Using a Random or Sequential <u>Number Generator, and to Dial those Numbers</u>

The vast majority of courts hold that, in order to qualify as an ATDS, the system used to make the calls must have the capacity to generate random or sequential numbers (as the text of the statute plainly requires).[2]  Here, Florida Health will show that the system used by certain third parties to make the calls at issue did not have the requisite capacity, and thus, is not an

---

[2]     *See, e.g., Morgan v. Adventist Health System/Sunbelt, Inc.*, No. 6:18-cv-1342-Orl-78DCI (M.D. Fla. Jan. 13, 2020), at ECF No. 202 (holding that random or sequential number generation required for a device to qualify as an ATDS); *Brown v. Ocwen Loan Servicing LLC*, No. 8:18-cv-136-T-60AEP, 2019 WL 4221718, at *1 (M.D. Fla. Sept. 5, 2019) (granting full defense motion for summary judgment and holding that predictive dialer is not an ATDS unless it can dial randomly or sequentially); *Dominguez v. Yahoo, Inc.*, 2018 U.S. App. LEXIS 17350 (3rd Cir. June 26, 2018)(systems that lack the present capacity to dial randomly or sequentially do not qualify as an ATDS under the TCPA); *Pinkus v. Sirius Xm Radio*, 319 F. Supp. 3d 927 (N.D. Ill. 2018) (holding that the failure to allege random or sequential number generation fatal to a TCPA complaint); *Gary v. TrueBlue, Inc*., No. 17-cv-10544, 2018 WL 3647046 (E.D. Mich. Aug. 1, 2018) (holding that random or sequential number generation necessary to assert a TCPA claim); *Keyes v. Ocwen Loan Servicing*, 335 F. Supp. 3d 951 (E.D. Mich. 2018) (holding that a predictive dialer was not an ATDS because it did not dial using a random or sequential number generator); *Stewart L. Roark v. Credit One Bank, N.A.*, No. 16-cv-173, 2018 WL 5921652 (D. Minn. Nov. 13, 2018) (random or sequential number generation is required); *Johnson v. Yahoo!, Inc.*, 346 F. Supp. 3d 1159 (N.D. Ill. 2018) (holding that the statutory definition of ATDS unambiguously requires the capacity of a system for random or sequential number generation); *Folkerts v. Seterus, Inc.,*  No. 17-cv-4171, 2019 WL 1227790 (N.D. Ill. Mar. 15, 2019) (random or sequential number generation required for a system to qualify as an ATDS); *Adams v. Safe Home Sec. Inc.,*  No. 3:18-cv-03098-M, 2019 WL 3428776 (N.D. Tex. July 30, 2019) (holding, by Chief Judge, that predictive dialers do not qualify as an ATDS and that dialers must use random or sequential number generation to qualify under the TCPA).

ATDS.  Based on information currently known by Florida Health, the system requires that a person manually input specific telephone numbers into the system.  The system does not have the capacity to generate random or sequential numbers.  Without specific telephone numbers being input into the system, the system does not and cannot make calls.  These facts, if and when proven, take the system outside of the scope of the TCPA, which is a complete defense to Plaintiff's claims.

### ii.  The System at Issue Requires Human Intervention

There is no dispute that the basic function of an ATDS is the ability to dial numbers without human intervention. For this reason, Courts (including this one) routinely grant summary judgment (or otherwise find in favor of TCPA defendants) where human intervention is required to make calls or send messages.[3] Here, Florida Health will show that human intervention was

---

[3]        *See, e.g., Ramos v. Hopele of Fort Lauderdale, LLC,* 334 F. Supp. 3d 1262 (S.D. Fla. 2018) (Moreno, J.) (granting defense summary judgment and finding that the significant amount of human intervention required to use the system *at all* removed system from being an ATDS, and therefore, the scope of the TCPA); *Gaza v. Auto Glass Am., LLC,* No. 8:17-CV-1811-T-27AEP, 2018 WL 5775915, at *4 (M.D. Fla. Nov. 2, 2018) (holding that the creation of a dialer list by virtue of manual review of invoices and other documents to create an excel spreadsheet of phone numbers and contact information was sufficient human intervention to defeat ATDS usage); *DeCapua v. Metro. Prop. & Cas. Ins. Co.*, No. 18-cv-00590-WES, 2019 WL 4757995 (D.R.I. Sept. 30, 2019) (following *Ramos* and dismissing TCPA case on a motion to dismiss because the system required human intervention and was therefore not an ATDS); *Duran v. La Boom Disco, Inc.*, 369 F. Supp. 3d 476 (E.D.N.Y. 2019) (finding that programs are not autodialers due to amount of human intervention); *Ferrer v. Bayview Loan Servicing*, No. 15-cv-20877, 2018 WL 582584, at *6 (S.D. Fla. Jan. 26, 2018) (Scola, J.) (holding that where the platform required a user to manually dial calls by selecting recipients, and the platform could not "place calls without human input, and [w]as not able to dial predictively, store, or produce telephone numbers independently," defendant was entitled to summary judgment on the TCPA claim); *Pozo v. Stellar Recovery Collection Agency, Inc.*, No. 15-cv-929, 2016 WL 7851415, at *3 (M.D. Fla. Sept. 2, 2016) (granting summary judgment on TCPA claim and stating that "dialing systems which require an agent to manually initiate calls do not qualify as autodialers under the TCPA"); *Wilcox v. Green Tree Servicing, LLC*, No. 14-cv-1681, 2015 WL 2092671, at *4 (M.D. Fla. May 5, 2015) ("[I]f the [person] selects the number to be called, then the call would be made as a result of human intervention, and the call would not be made using an ATDS"); *Estrella v. Ltd Fin. Servs., LP*, No. 14-cv-2624, 2015 WL 6742062, at *3 (M.D. Fla.

required to use the system that made the calls at issue here.  Specifically, upon information and belief, the system at issue cannot function without a person inputting numbers to be called, operating the system itself, and choosing who to call, and when to call.  Courts have held that these facts are sufficient to defeat allegations of ATDS usage.  If and when proven, these facts would require a judgment in favor of Florida Health.

### b.   Plaintiff Consented to the Calls

The TCPA prohibits the making of "any call" other than an emergency call "using an automatic telephone dialing system" to "any telephone number assigned to a ... cellular telephone service" **without the "prior express consent of the called party**." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).  Consent of the called party is a complete defense to a TCPA case.  Here, Florida Health will seek to show that it obtained the requisite level of consent from Plaintiff.

---

Nov. 2, 2015) (plaintiff's TCPA claims fail as a matter of law where "the calls were placed manually with the use of human intervention"); *Gaza v. LTD Fin. Servs., L.P.*, No. 14-cv-1012, 2015 WL 5009741, at *4 (M.D. Fla. Aug. 24, 2015) ("The record shows that the subject calls were placed manually [as] the agent selected the number to be called and the calls were made as a result of human intervention."); *Jenkins v. mGage*, LLC, No. 14-cv-2791-WSD, 2016 WL 4263937 (N.D. Ga. Aug. 12, 2016), *Luna v. Shac*, 122 F. Supp. 3d 936 (N.D. Cal. 2015), *Herrick v. GoDaddy.com LLC*, 312 F. Supp. 3d 792 (D. Ariz. 2018); *Blow v. Bijora, Inc.*, 191 F. Supp. 3d 780 (N.D. Ill. 2016); *Schlusselberg v. Receivables Performance Management, LLC*, No. 15-7572 (FLW), 2017 WL 2812884, at *1, *3 (D. N.J. June 29, 2017) (granting summary judgment based on human intervention to make calls); *Goad v. Censeo Health, LLC*, No. 3:15CV00197 JLH, 2016 WL 2944658, at *2-3 (E.D. Ark. May 19, 2016) (granting summary judgment based on "evidence that [the] telephone system require[d] human intervention to function"); *Glauser v. GroupMe, Inc.*, 11-cv-2584, 2015 WL 475111, at *6 (N.D. Cal. Feb. 4, 2015) (holding that level of human intervention precluded any TCPA liability because dialing "numbers without human intervention is required before any liability under the TCPA can apply"); *McKenna v. WhisperText*, No. 14-cv-00424, 2015 WL 428728, at *4 (N.D. Cal. Jan. 30, 2015) (dismissing TCPA claims where human intervention was involved prior to text messages being sent, thereby "disqualifying the equipment at issue as any kind of ATDS" because uploading customer telephone numbers to a database requires "human curation and intervention"). Even the mere act of uploading customer telephone numbers to a database requires "human curation and intervention," defeating liability under the TCPA. *Id.* at *10-11; *Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189, 1193-94 (W.D. Wash. 2014) (granting summary judgment for defendant where calling system required defendant's agent to press "accept" to initiate each call).

While investigation into the facts of this case and Plaintiff's consent are still underway, Florida Health proffers that, upon information and belief, Florida Health (or another third party) obtained Plaintiff's consent to make the calls at issue here. If proven, the consent would be a complete defense, requiring a judgment in favor of Florida Health.

### c.      The TCPA Violates the First Amendment to the Constitution

TCPA defendants have long challenged the TCPA's restrictions on speech as violating the First Amendment to the United States Constitution.  On January 10, 2020, the U.S. Supreme Court granted a petition for certiorari in *William P. Barr et al. v. American Association of Political Consultants, Inc. et al.*, No. 19-631 (U.S.), to review the Fourth Circuit Court of Appeal's decision striking down 47 U.S.C. § 227(b)(1)(A)(iii) as unconstitutional.  Should the TCPA be deemed an unconstitutional limitation on Free Speech under the First Amendment by the U.S. Supreme Court, Florida Health would be entitled to a dismissal of this action.

### d.      The McCarran-Ferguson Act Precludes Plaintiff's Claims

The McCarran-Ferguson Act, 15 U.S.C. § 1011, *et seq.*, precludes the applicability of the TCPA to Florida Health here. The McCarran-Ferguson Act provides that "the business of insurance … shall be subject to the laws of the … States which relate to the regulation … of such business." 15 U.S.C. § 1012(a). As such, "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law by any State for the purpose of regulating the business of insurance… unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b).  The McCarran-Ferguson Act therefore reverses the general rule of federal pre-emption by imposing a rule that a state law enacted for the purpose of regulating the "business of insurance" does not yield to a conflicting federal statute unless such statute specifically relates to the "business of insurance". *US Dep't of Treasury v. Fabe*, 508 U.S. 491, 491-92 (1993).

13

A four-pronged test is used to determine whether a state law regulating insurance pre-empts a federal law such as the TCPA by operation of the McCarran-Ferguson Act:

> The initial question is whether [the TCPA] "specifically relates to the business of insurance" within the meaning of 15 U.S.C. § 1012(b). If it does, the McCarran Act defense is automatically defeated and [the] inquiry is at an end. If it does not, then [the court] must decide whether [Florida Health's telemarketing] constitutes the "business of insurance" for purposes of § 1012(b). If those activities are not part of the business of insurance, [the TCPA] would apply. If they are a part of such business, we must then determine whether [Florida] has "enacted by any [law] … for the purpose of regulating" such activities. If [Florida] has not done so, [TCPA] would apply. If it has, we must finally decide whether [TCPA] would "invalidate, impair, or supersede" such state law.

*Cochran v. Paco Inc.*, 606 F.2d 460, 464 (5th Cir. 1979) (citations omitted).[4]

Thus, the relevant issues for the Court in determining the applicability of the McCarran-Ferguson Act here are: (i) whether the TCPA "specifically relates" to the business of insurance; (ii) whether telemarketing calls and advertising by insurance companies constitute the business of insurance; (iii) whether Florida has enacted laws "for the purpose of regulating" the business of insurance; and (iv) whether the TCPA "impairs, invalidates, or supersedes" Florida law regulating the business of insurance.  All factors warrant a finding that the TCPA does not apply.

"Unless a federal law *specifically relates* to the business of insurance, it will not be applied when it "invalidates, impairs, or supersedes" a state law "enacted for the purpose of regulating the business of insurance."  *Sabo v. Metro. Life Ins. Co.*, 137 F.3d 185, 190 (3d Cir. 1998) (emphasis added).  The TCPA, on its face, does not "specifically relate" to the business of insurance.  Accordingly, the first prong of the analysis is satisfied.

---

[4]    Pursuant to *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981), *Cochran* is binding on this Court.

The second prong, whether telemarketing calls and advertising by insurance companies constitute the "business of insurance," also weights in favor of Florida Health. Specifically, the Supreme Court has held that "[t]he selling and advertising of [insurance] policies, … [is] within the scope of the [McCarran-Ferguson Act]." *SEC v. Nat'l Sec., Inc.*, 393 U.S. 453, 460 (1969).

The third prong is satisfied because Florida has enacted laws "for the purpose of regulating" the business of insurance, and more specifically, telemarketing relating the to the sale of insurance. The Florida Telemarketing Act, codified at Sections 501.601 – 501.626, Florida Statutes, regulates telemarketing in the State of Florida. Notably, the Florida Telemarketing Act:

> ***does not apply*** [to a]ny licensed insurance broker, agent, customer representative, or solicitor when soliciting within the scope of his or her license. As used in this section, "licensed insurance broker, agent, customer representative, or solicitor" means any insurance broker, agent, customer representative, or solicitor licensed by an official or agency of this state or of any state of the United States.

Section 501.604(8), Florida Statutes (emphasis added).

The Supreme Court has explained that state laws possessing the end, intention or aim of adjusting, regulating, managing or controlling the business of insurance are within the broad category of laws enacted for the purpose of regulating the business of insurance. *Fabe*, 508 U.S. at 505. The Florida Telemarketing Act clearly regulates telemarketing and advertising, and has expressly exempted insurance companies from those restrictions. Accordingly, the third prong of the analysis is met.

The fourth prong is also met. The TCPA directly conflicts with Florida laws specifically enacted for the purpose of regulating the business of insurance as it pertains to insurance companies' telemarketing and advertising efforts. The TCPA prohibits unsolicited insurance advertising by telephone, while the Florida Telemarketing Act permits insurance advertising by

telephone (by exempting insurance companies).  Accordingly, the TCPA  "impairs, invalidates or supersedes" state laws regulating the business of insurance.

Because all four factors are met, the McCarran-Ferguson Act preempts the TCPA's applicability here.

**e.      Plaintiff Has Not Suffered an Injury-In-Fact
and Thus Lacks Standing Under Article III**

The receipt of a phone call – without more – is not a sufficient injury-in-fact for a viable claim under the TCPA. As the Eleventh Circuit has explained, "a plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998, 1002 (11th Cir. 2016), *reh'g en banc denied*, 855 F.3d 1265 (11th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016)). Following *Spokeo*, federal courts across the nation have dismissed statutory claims similarly alleging only "a bare procedural violation, divorced from any concrete harm," finding that such claims do not "satisfy the injury-in-fact requirement of Article III" standing. 136 S. Ct. at 1549. "[T]he relevant question is whether [plaintiff] was harmed when th[e] statutory right was violated." *Nicklaw*, 839 F.3d at 1002; *Mejia v. Ocwen Loan Servicing, LLC*, 730 F. App'x 860, 861, 865 (11th Cir. Aug. 8, 2017) ("affirm[ing] for the reasons stated in the District Court's dispositive order" dismissal of claim pursuant to "the Supreme Court's guidance in *Spokeo*" because "[p]laintiff cannot assert a statutory violation" where "[p]laintiff has not suffered a concrete injury in fact").

Plaintiff here fails to allege any ultimate facts to show that she incurred any concrete, injury-in-fact. Instead, he alleges in a conclusory fashion that the calls invaded his privacy, and that he was aggravated as a result of receiving them. *See* ECF No. 1, ¶ 34.  If the Court were to

16

find that these allegations are insufficient to confer standing under Article III – as the cited cases instruct – the Complaint will be subject to dismissal.

**f.      Count II is Not a Standalone Cause of Action**

Count II alleges that Florida Health willfully and knowingly violated the TCPA, and is therefore liable for treble damages in the amount of $1,500 per call.  However, such a standalone cause of action is not valid.  "The possibility of treble damages under [the TCPA] is not a separate cause of action; it is simply an enhancement of the damages available for a [certain] violation of [the TCPA]." *See Pitcon v. Greenway Chrysler-Jeep-Dodge*, No. 19-cv-196-Orl-31DCI, 2019 WL 2019 WL 2567971, at *3 (M.D. Fla. June 21, 2019) (dismissing the same cause of action pled as Count II here). Thus, Count II would be subject to dismissal if the default were vacated.

**g.      Florida Health Did Not Itself Make,
Send, Transmit or Initiate Any Calls**

Plaintiff's Complaint alleges that Florida Health violated the Section 227(b)(1)(A)(iii) of the TCPA by making calls to Plaintiff's cellular telephone using an ATDS.  *See* Compl., ECF No. 1, ¶ 49.  The evidence, when presented by Florida Health, will unequivocally show that Florida Health did not itself make, transmit, send or initiate any calls – including the calls that Plaintiff about.  Rather, certain third-parties made, sent, transmitted, or initiated the subject calls. These third-parties acted on their own, and their actions were not controlled by, approved by, or ratified by, Florida Health. These third parties are their own independent businesses, which operate without the supervision of Florida Health.  Florida Health does not control their actions at all, and does not direct them how to conduct their actions.

Upon information and belief, (i) Florida Health does not operate any dialing systems itself, (ii) these third parties use equipment chosen and controlled only by them, and (iii) Florida

Health is not part of the dialing process at all.  Based on these facts, Plaintiff will not be able to state any TCPA claim directly against Florida Health, as the Complaint is currently pled.

**WHEREFORE**, having demonstrated good cause in accordance with Rule 55, Fed. R. Civ. P., Florida Health respectfully requests that this Court set aside the Default and allow Florida Health to defend this case on the merits.  Vacating the default would be consistent with the Eleventh Circuit's preference for deciding this case on the merits because (i) the default was not willful, (ii) setting aside the default would not prejudice Plaintiff, and (iii) Florida Health has a number of meritorious defenses, all as set forth above.

## CERTIFICATE OF GOOD FAITH CONFERENCE

The undersigned certifies that Jeffrey B. Pertnoy, Esq., counsel for Defendant, has conferred with counsel for Plaintiff, Seth Lehrman, Esq., regarding the relief sought in the instant Motion, by both email and telephone.  Counsel for Plaintiff opposes the relief sought herein.

Date: January 17, 2020.                                    Respectfully submitted,

**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida 33131
Tel: (305) 374-5600
Fax: (305) 374-5095

*/s/ Jeffrey B. Pertnoy*
Jeffrey B. Pertnoy (FBN 91939)
jeffrey.pertnoy@akerman.com
Lawrence D. Silverman (FBN 7160)
lawrence.silverman@akerman.com