UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-24013-DPG

ROBERT DOYLE, individually and on
behalf of all others similarly situated,

    Plaintiff,

vs.

FLORIDA HEALTH SOLUTION, CORP.,
a Florida Corporation,

    Defendant.
_____/

**DEFENDANT'S MOTION TO DISMISS, OR ALTERNATIVELY,
TO STAY PROCEEDINGS PENDING THE U.S. SUPREME COURT'S
DECISION IN *BARR V. AM. ASSOC. POLITICAL CONSULTANTS*,**

Defendant Florida Health Solution, Corp. ("**Florida Health**") moves to dismiss the Class Action Complaint [ECF No. 1] filed by Plaintiff Robert Doyle ("**Plaintiff**"), or alternatively, to stay all proceedings in this action pending the United States Supreme Court's decision in *William P. Barr v. American Association of Political Consultants, Inc., et al.*, Case No. 19-631 ("**AAPC**").

**I.      INTRODUCTION**

Plaintiff's Complaint asserts two causes of action alleging that Florida Health violated the Telephone Consumer Protection Act, 47 U.S.C. § 227(b) (the "**TCPA**") by placing calls to him using an automatic telephone dialing system ("**ATDS**"). Plaintiff's claims are both rooted in the TCPA's autodialing restrictions. The Court should either dismiss Plaintiff's claims or stay this case.

The Eleventh Circuit recently confirmed that in order for a dialing system to constitute an ATDS, it must have the capacity to generate random or sequential phone numbers. *See Glasser v. Hilton Grand Vacations Co., LLC*, No. 18-14499, No. 18-14586, 2020 WL 415811 (11th Cir. Jan.

1

27, 2020).  *Glasser* also held that dialing from a list of numbers, previously prepared by a caller, does not violate the TCPA.

Plaintiff's allegations of ATDS usage here are bare, and merely parrot the statutory language. The Complaint contains *no* factual support for its sole allegation of random or sequential number generation – a far cry from what *Glasser* requires.  *See* Compl., ¶ 28 (alleging, only "upon information and belief," that the unnamed, and unidentified ATDS "us[es] a random or sequential number generator").  The Complaint also lacks support for the allegation that the unidentified ATDS "has the capacity to store numbers on a list and to dial from a list."  *See* Compl. ¶ 29. Nevertheless, calling from a list of pre-prepared numbers is not a violation of the TCPA.  *See Glasser*, 2020 WL 415811, at *7.  Plaintiff's allegations of ATDS usage fall short, and do not state a claim for relief.  In addition to these threshold pleading deficiencies, the Complaint should also be dismissed for five additional reasons.

**First**, Count II, alleging a willful and knowing violation of the TCPA, is not a viable standalone cause of action.  This claim also lacks any supporting factual detail.  It is therefore subject to dismissal.  **Second**, Plaintiff has not specifically alleged that the calls at issue were for marketing, advertising or telemarketing purposes.  **Third**, Plaintiff's own allegations undermine his claims – as Plaintiff admits that, for each alleged call at issue, he spoke to a live person on the other end of the phone, which is fatal to his claims that the calls were made using an ATDS or were entirely prerecorded messages. *See* Compl., ¶¶ 19-21 (admitting that he spoke to a "live agent who greeted [him] in Spanish"). **Fourth**, the autodialing restrictions of the TCPA (on which Plaintiff's claims are based) violate the First Amendment to the United States Constitution.  **Fifth**, the McCarran-Ferguson Act, 15 U.S.C. § 1012, *et seq.*, precludes the applicability of the TCPA to Florida Health.

Alternative to dismissal, Florida Health seeks a temporary stay of this action. On January 10, 2020, the Supreme Court granted certiorari in AAPC to review the constitutionality of the TCPA. The Supreme Court's Order granting certiorari is attached hereto as **Exhibit A**. The Supreme Court is reviewing the Fourth Circuit Court of Appeal's decision in *American Association of Political Consultants, Inc. v. FCC*, 923 F.3d 159 (4th Cir. 2019), which found that (i) the government-debt exception to the TCPA's autodialing restrictions is unconstitutional, and (ii) severing the exception from the rest of the statute was the proper remedy. In accepting certiorari, the Supreme Court has framed the issues on appeal as follows:

> Whether the government-debt exception to the TCPA's automated-call restriction violates the First Amendment, *and whether the proper remedy for any constitutional violation is to sever the exception from the remainder of the statute.*

*See* Ex. A (emphasis added).[1]

While the "government-debt exception" to the TCPA's autodialing restrictions is not squarely at issue here, the Supreme Court's decision will nevertheless have a direct (and dispositive) impact on this case. The Supreme Court is likely to find that severing the unconstitutional exception to the TCPA is not the proper remedy. Rather, based on Supreme Court precedent, the Court is likely to find that the proper remedy is to strike down the entirety of the TCPA's autodialing restrictions as unconstitutional, thereby ending this case. The Court should temporarily stay this case pending the Supreme Court's decision (which is expected in June 2020).

## II.   RELEVANT FACTUAL ALLEGATIONS

Plaintiff's allegations, even taken as true, support dismissal. Plaintiff alleges in a conclusory fashion that, without his consent, Florida Health used an ATDS to call him. *See*

---

[1] *See also* U.S. Supreme Court Docket, available at https://www.supremecourt.gov/docket/docketfiles/html/public/19-631.html, last visited February 11, 2020.

Compl., ¶¶ 27-29.  Plaintiff pleads *no* detailed, factual allegations regarding random or sequential number generation. *See* Compl., ¶ 28. Moreover, Plaintiff all but admits that there were no violations of the TCPA here, because he confirms that, for each alleged call at issue, he spoke to a live person on the other end of the phone. *See* Compl., ¶¶ 19-21 (admitting that he spoke to a "live agent who greeted [him] in Spanish").

Aside from these few bare, conclusory allegations, the rest of the Complaint consists of irrelevant legal argument and generic class allegations.  Perhaps most telling is that the Complaint does not contain any details regarding the content of the calls, other than that they were allegedly made by Florida Health.  The Complaint's allegations are completely silent in this regard, leaving the Court in the dark on whether the calls were for informational purposes, advertising/marketing or solicitation purposes, or otherwise. Without these key allegations, Plaintiff has fallen short of alleging violations of the TCPA.

### III. MEMORANDUM OF LAW

#### A. Plaintiff's Complaint is Subject to Dismissal

To survive a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., a complaint must "state a claim upon which relief can be granted."  To meet this standard, a complaint must allege enough facts "to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 570 (2007). Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

##### 1. Plaintiff's Boilerplate ATDS Allegations Are Insufficient

"To sufficiently plead the ATDS element of a TCPA claim, a plaintiff may not merely recite the statutory elements of the use of an ATDS or prerecorded voice without alleging

4

additional facts to support those facts." *Adams v. Ocwen Loan Servicing, LLC*, 366 F. Supp. 3d 1350, 1355-56 (S.D. Fla. 2018); *Turizo v. Jiffy Lube Int'l Inc.*, 2019 WL 4737696 (S.D. Fla. Sept. 27, 2019) (holding that complaint lacked detail regarding ATDS usage and allegations were "insufficient to plausibly allege the use of an ATDS"); *Simon v. Ultimate Fitness Grp., LLC*, No. 19-CV-890, 2019 WL 4382204, at *7 (S.D.N.Y. Aug. 19, 2019) (requiring factual allegations that are "plausible indicia of an ATDS"); *Sterling v. Securus Techs., Inc.*, No. 3:18-CV-1310 (VAB), 2019 WL 3387043, at *1 (D. Conn. July 26, 2019) ("Plaintiffs must do more than simply parrot the statutory language."); *Douek v. Bank of Am. Corp.*, No. 17-2313, 2017 WL 3835700, at *2 (D.N.J. Sept. 1, 2017) ("[A] bare allegation that defendants used an ATDS is not enough.")

Plaintiff's allegations are not sufficient under *Glasser* to state a claim because there are no facts pled supporting that a random or sequential number generator was used. *See* Compl., ¶ 28 (alleging, only "upon information and belief," the boilerplate conclusion that the unnamed, and unidentified ATDS "us[es] a random or sequential number generator"). The Complaint also lacks support for the allegation that the unidentified ATDS "has the capacity to store numbers on a list and to dial from a list." *See* Compl. ¶ 29. Even if this allegation were true, in this Circuit, calling from a list of numbers is not a TCPA violation. *See Glasser*, 2020 WL 415811, at *7.

### 2. Count II Is Not a Viable Cause of Action

Count II alleges that Florida Health willfully and knowingly violated the TCPA, and is therefore liable for treble damages of $1,500 per call. However, such a standalone cause of action is not valid. "The possibility of treble damages under [the TCPA] is not a separate cause of action; it is simply an enhancement of the damages available for a [] violation of [the TCPA]." *Pitcon v. Greenway Chrysler-Jeep-Dodge*, No. 19-cv-196-Orl-31DCI, 2019 WL 2019 WL 2567971, at *3 (M.D. Fla. June 21, 2019) (dismissing the same cause of action pled as Count II here).

Even if it were a standalone cause of action (it is not), Plaintiff does not assert any allegations to support the trebling of damages here. There are simply no fact that Florida Health's actions, if proven, were willful or knowing violations of the TCPA. *See McCullough v. Maximum Title Loans LLC*, No. CV-19-00717-PHX-JJT, 2019 WL 3933754, at *3 (D. Ariz. Aug. 20, 2019) (dismissing and striking request for treble damages for willful and knowing violation of the TCPA for insufficient pleading, and finding that the facts supporting an inference that the calls at issue knowingly or willfully violated the TCPA must be pleaded specifically, and threadbare allegations are insufficient). Thus, Count II is subject to dismissal.

### 3. Plaintiff's Failure to Plead Details About the Content of the Alleged Calls is Fatal to His Claims

Plaintiff has not alleged that the calls at issue were for marketing, advertising or telemarketing purposes. He generally alleges (without support) that Florida Health has a practice of telemarketing to sell its services. It is improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged..." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Plaintiff's Complaint is silent on the content of the calls at issue. Therefore, the purpose of the calls is not clearly pled. This is significant because the level of consent required under the TCPA depends entirely on the nature and purpose of the call. If the calls were *not* for marketing, advertising or telemarketing purposes, then the mere providing of a telephone number is sufficient consent under the TCPA. The FCC explained that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *See* In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 F.C.C. Rcd. 8752, 8769 (Oct. 16, 1992).

51886650;6

Based on the insufficiency of Plaintiff's pleading, Plaintiff has failed to state a claim. Plaintiff has not sufficiently pled which consent standard applies, due to his failure to allege the nature and scope of the calls' content. *See Brooks v. The Kroger Co.*, No. 19-cv-00106, 2019 WL 3778675 (S.D. Cal. Aug. 12, 2019) (dismissing complaint where plaintiff did not allege that "the calls were done for marketing purposes" and thus failed to state a cause of action); *Williams-Diggins v. Republic Services,* No. 18-cv-2313, 2019 WL 5394022, at *2 (N.D. Ohio Apr. 25, 2019) (dismissing TCPA complaint because it did not allege that telephone solicitations occurred, "[t]hus, the TCPA does not apply").

### 4. Plaintiff's Admission That He Spoke to a Live Person is Fatal to His Claims

The TCPA prohibits the making of "any call" other than an emergency call "using an automatic telephone dialing system or an artificial or *prerecorded voice*" to "any telephone number assigned to a ... cellular telephone service" without the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). Plaintiff's own allegations undermine his claims. Plaintiff admits that, for each alleged call at issue, he spoke to a live person on the other end of the phone. *See* Compl., ¶¶ 19-21 (admitting that for each call, Plaintiff spoke to a "live agent who greeted [him] in Spanish"). Taking Plaintiff's allegations as true, all calls at issue were live calls, with a human on both ends of the phone.

These facts do not give rise to TCPA liability because only calls which are *entirely* pre-recorded and lack any human interaction trigger the TCPA's prerecorded call restrictions.[2] *See e.g., Moser v. F.C.C.,* 46 F.3d 970 (9th Cir. 1995). In fact, the FCC's own brief in *Moser* conceded

---

[2] This exact issue – whether a prerecorded voice used during an otherwise live call, and tangentially, whether a call that is not *entirely* prerecorded can violate the TCPA – is pending before the FCC. *See* Petition for Expedited Declaratory Ruling Regarding the Application of 47 U.S.C. § 227(b)(1)(B) of the Telephone Consumer Protective Act, in *In the Matter of Yodel Technologies LLC's Petition for Expedited Declaratory Ruling*, CG Docket No. 02-278 (filed Sept. 13, 2019); *see also* https://www.fcc.gov/ecfs/filing/1091320379447, last visited February 11, 2020.

that Congress had granted greater latitude where there was interaction between humans than where there were only machine-based messages. *See* FCC Brief for Appellant FCC, 1993 WL 13101270, at *10.  The FCC noted that "the demarcation drawn by the statute, which gives greater protection to human exchange than prerecorded announcements," was further supported by state experiences, favorably citing a finding that "the distinction between live and prerecorded calls 'addresses the inescapable fact that machines cannot ascertain the propriety of proceeding with a message.'" *Id.*; *see also* Reply Brief for Appellants Federal Communications Commission, 1994 WL 16014724, p. 4 ("In contrast,..., an automated message, 'cannot interact with the customer except in preprogrammed ways' and does 'not allow the caller to' ...ask questions, register complaints, or ask not to be called again.").  Here, Plaintiff admits he spoke to a live person during all of the calls at issue. *See* Compl., ¶¶ 19-21.  Dismissal is therefore required.

### 5. The Autodialing Restrictions in the TCPA are Unconstitutional

As the Supreme Court is poised to address, the autodialing restrictions of the TCPA (on which Plaintiff's claims are based) violate the First Amendment to the United States Constitution.

"Laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference." *Turner Broadcasting Sys., Inc. v. Fed. Comm. Comm'n*, 512 U.S. 622, 658 (1994).  The TCPA's automated call restrictions (the "**Restrictions**") draw impermissible lines based on the content of the call and who is making the call.

The Restrictions, generally, prohibit calls to numbers assigned to a cell phone using an ATDS or an artificial or prerecorded voice, without consent. But, in 2015, the statute was amended to make a content-based exemption for calls "made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A) & (A)(iii).  Coverage under the Restrictions hinges

on the content of the message, as calls to collect a government-backed debt and for emergency purposes are permissible, but calls for other purposes, made by other callers, violate the law.

Two Circuit Courts of Appeal have held that the Restrictions are unconstitutional, and have found severed the unconstitutional provisions. *See Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*, 923 F. 3d 159 (4th Cir. 2019), *cert granted sub nom Barr v. Political Consultants*, No. 19-631, 2020 WL 113070 (U.S. Jan. 10, 2020) (hereinafter "***AAPC***") and *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019). Both courts found that the "government backed debt exemption" was an unconstitutional content-based exception to the TCPA's restrictions on free speech, which did not survive strict scrutiny. Both Courts severed the exemption, allowing the remainder of the TCPA to stand. Relying on its own precedent, the Supreme Court will likely find, as this Court should find, that the exemption is not severable. Rather, the entirety of the autodialing Restrictions of TCPA are unconstitutional.

Indeed, the Supreme Court has a history of striking down the entirety of these types of unconstitutional provisions, not the exception itself. For example, in *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2224 (2015), the Court struck down a city's sign code in its entirety. The code prohibited outdoor signs without a permit, but exempted certain categories of signs from the permitting requirement, depending on sign's content. The Court found the entirety of the sign code unconstitutional because eliminating the exceptions would have abridged more speech. *Id.*

*Reed* is not alone. The Supreme Court has a proven track record of striking down the entirety of laws that abridge free speech, rather than striking down the only the narrow exceptions to those laws. *See, e.g., Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 805 (2011); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 563-64, 580 (2011); *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 190 (1999); *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 488-91 (1995); *City*

9

*of Ladue v. Gilleo*, 512 U.S. 43, 53 (1994); *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 430-31 (1993); *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 233 (1987); *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 592 (1983); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 795 (1978).

Accordingly, this Court should find that the TCPA's autodialing restrictions – in their entirety – are unconstitutional, necessitating the dismissal of Plaintiff's Complaint.

### 6. The McCarran-Ferguson Act Precludes Liability

Plaintiff alleges that Florida Health "is in the business of selling credit health savings and/or health insurance policies." *See* Compl., ¶ 12. The McCarran-Ferguson Act, 15 U.S.C. § 1011, *et seq.*, precludes the applicability of the TCPA to Florida Health. The McCarran-Ferguson Act provides that "the business of insurance … shall be subject to the laws of the … States which relate to the regulation … of such business." 15 U.S.C. § 1012(a). As such, "[n]o Act of Congress [including the TCPA] shall be construed to invalidate, impair, or supersede any law by any State for the purpose of regulating the business of insurance… unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). The McCarran-Ferguson Act therefore reverses the general rule of federal pre-emption by imposing a rule that a state law enacted for the purpose of regulating the "business of insurance" does not yield to a conflicting federal statute unless such statute specifically relates to the "business of insurance". *US Dep't of Treasury v. Fabe*, 508 U.S. 491, 491-92 (1993).

A four-pronged test is used to determine whether a state law regulating insurance pre-empts a federal law such as the TCPA by operation of the McCarran-Ferguson Act:

> The initial question is whether [the TCPA] "specifically relates to the business of insurance" within the meaning of 15 U.S.C. § 1012(b). If it does, the McCarran Act defense is automatically defeated and [the] inquiry is at an end. If it does not, then [the court]

> must decide whether [Florida Health's telemarketing] constitutes the "business of insurance" for purposes of § 1012(b). If those activities are not part of the business of insurance, [the TCPA] would apply. If they are a part of such business, we must then determine whether [Florida] has "enacted by any [law] … for the purpose of regulating" such activities. If [Florida] has not done so, [TCPA] would apply. If it has, we must finally decide whether [TCPA] would "invalidate, impair, or supersede" such state law.

*Cochran v. Paco Inc.*, 606 F.2d 460, 464 (5th Cir. 1979) (citations omitted).[3]

Thus, the relevant issues for the Court in determining the applicability of the McCarran-Ferguson Act here are: (i) whether the TCPA "specifically relates" to the business of insurance; (ii) whether telemarketing calls and advertising by insurance companies constitute the business of insurance; (iii) whether Florida has enacted laws "for the purpose of regulating" the business of insurance; and (iv) whether the TCPA "impairs, invalidates, or supersedes" Florida law regulating the business of insurance. All factors warrant a finding that the TCPA does not apply.

"Unless a federal law *specifically relates* to the business of insurance, it will not be applied when it "invalidates, impairs, or supersedes" a state law "enacted for the purpose of regulating the business of insurance." *Sabo v. Metro. Life Ins. Co.*, 137 F.3d 185, 190 (3d Cir. 1998) (emphasis added). The TCPA, on its face, does not "specifically relate" to the business of insurance. Accordingly, the first prong of the analysis is satisfied.

The second prong, whether telemarketing calls and advertising by insurance companies constitute the "business of insurance," also weights in favor of Florida Health. Specifically, the Supreme Court has held that "[t]he selling and advertising of [insurance] policies, … [is] within the scope of the [McCarran-Ferguson Act]." *SEC v. Nat'l Sec., Inc.*, 393 U.S. 453, 460 (1969).

The third prong is satisfied because Florida has enacted laws "for the purpose of regulating" the business of insurance, and more specifically, telemarketing relating the to the sale of

---

[3] Pursuant to *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981), *Cochran* is binding on this Court.

11

51886650;6

insurance. The Florida Telemarketing Act, codified at Sections 501.601 – 501.626, Florida Statutes, regulates telemarketing in the State of Florida. Notably, the Florida Telemarketing Act:

> ***does not apply*** [to a]ny licensed insurance broker, agent, customer representative, or solicitor when soliciting within the scope of his or her license. As used in this section, "licensed insurance broker, agent, customer representative, or solicitor" means any insurance broker, agent, customer representative, or solicitor licensed by an official or agency of this state or of any state of the United States.

Section 501.604(8), Florida Statutes (emphasis added). Florida Health is an entity covered by Section 501.604(8), as Plaintiff admits. *See* Compl., ¶ 12.

The Supreme Court has explained that state laws possessing the end, intention or aim of adjusting, regulating, managing or controlling the business of insurance are within the broad category of laws enacted for the purpose of regulating the business of insurance. *Fabe*, 508 U.S. at 505. The Florida Telemarketing Act clearly regulates telemarketing and advertising, and has expressly exempted insurance companies (including by Plaintiff's own admission, Florida Health) from those restrictions. Accordingly, the third prong of the analysis is met.

The fourth prong is also met. The TCPA directly conflicts with Florida laws enacted for the purpose of regulating the business of insurance as it pertains to insurance companies' telemarketing and advertising efforts. The TCPA, on one hand, *prohibits* unsolicited insurance advertising by telephone, while the Florida Telemarketing Act, on the other, *permits* insurance advertising and solicitation by telephone (by exempting insurance companies). Accordingly, the TCPA "impairs, invalidates or supersedes" state laws regulating the business of insurance.

Because all four factors are met, the McCarran-Ferguson Act preempts the TCPA's applicability to Florida Health here.

### B.   Alternatively, the Court Should Stay This Case Pending the Supreme Court's Ruling

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Ryan v. Gonzales*, 568 U.S. 57, 74 (2013) (same); *Johnson v. Board of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001) ("[W]e accord district courts broad discretion over the management of pre-trial activities, including discovery and scheduling").  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) (citation omitted.).

Here, Plaintiff's claims hinge entirely on the continued viability and constitutionality of the TCPA's autodialing restrictions. The Supreme Court is poised to consider whether those restrictions (which are indisputably content-based restrictions on speech) survive strict scrutiny and violate the First Amendment.  The Supreme Court's decision will likely be dispositive of this case.  For that reason, the Honorable Judge Paul G. Byron, United States District Judge in the Middle District of Florida, recently entered a similar stay based on the same facts and circumstances as those present here. *See Wright v. Exp. Realty, LLC*, No. 18-cv-1851-PGB-EJK (M.D. Fla. Feb. 7, 2020), at ECF No. 99 – attached hereto as **Exhibit B**.  In granting a stay pending the Supreme Court's ruling, Judge Byron held as follows:

> The Court believes that any proceedings before the Supreme Court issues guidance in the upcoming *Barr v. Am. Ass'n* will be—among other things—a waste of judicial resources and a waste of the parties' time and energy.

*See* Ex. B at 2.

The Court here should similarly exercise its discretion and stay these proceedings. Litigating this case in the absence of guidance from the Supreme Court will be inefficient, a waste of the resources of the Court and the parties, and may result in liability for Florida Health that will be erased if the Supreme Court finds that the entirety of the TCPA's autodialing Restrictions are unconstitutional (which is likely, given the Supreme Court's precedent). The requested stay will be limited in time, as the Supreme Court is likely to rule this term (by June 2020). For reasons of judicial efficiency and economy, good cause exists to stay this case.

**WHEREFORE**, Defendant respectfully requests that this Honorable Court enter an Order dismissing Plaintiff's claims, or alternatively, staying this case pending the forthcoming decision from the United States Supreme Court in *William P. Barr v. American Association of Political Consultants, Inc., et al.*, Case No. 19-631, and granting Defendant such further and additional relief as the Court deems just and proper.

### CERTIFICATE OF GOOD FAITH CONFERENCE

The undersigned certifies that Jeffrey B. Pertnoy, Esq., counsel for Defendant, has conferred with counsel for Plaintiff, Seth Lehrman, Esq., regarding the Motion to Stay requested in the instant Motion. Counsel for Plaintiff opposes the relief sought herein.

Date: February 11, 2020.                                   Respectfully submitted,

**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida 33131
Tel: (305) 374-5600
Fax: (305) 374-5095

*/s/ Jeffrey B. Pertnoy*
Jeffrey B. Pertnoy (FBN 91939)
jeffrey.pertnoy@akerman.com
Lawrence D. Silverman (FBN 7160)
lawrence.silverman@akerman.com