**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 19-cv-24013-DPG**

ROBERT DOYLE, individually
and on behalf of all others similarly situated,

    *Plaintiff*,

vs.

FLORIDA HEALTH SOLUTION, CORP.,
a Florida Corporation,

    *Defendant*.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Plaintiff, Robert Doyle, ("Plaintiff"), through counsel files this Response in Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, or Alternatively, to Stay Proceedings Pending the U.S. Supreme Court Decision in *Barr v. Am. Assoc. Political Consultants* (ECF No. 20) ("Motion"), and states the following:

## I. INTRODUCTION

"Congress enacted the [Telephone Consumer Protection Act ("TCPA")] to prevent abusive telephone marketing practices," like the ones utilized by Defendant here. *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 648 (2019).

The Court should deny Defendant's Motion for the following reasons.

First, Plaintiff's allegations plausibly allege that Defendant repeatedly made unsolicited calls to Plaintiff using an Automatic Telephone Dialing System ("ATDS").

Second, Defendant called Plaintiff using an artificial or prerecorded voice, which is a separate and independent violation under the TCPA.

1

Third, no Court has found the TCPA to be entirely unconstitutional, and the Supreme Court is unlikely to reject the unanimous ruling of every single court to take up the severability issue with regard to the 2015 TCPA government debt-collection exemption clause ("2015 Clause"). If the Supreme Court agrees that the exemption is unconstitutional, which is not relevant here, the Court will likely sever that offending language and leave the balance of the TCPA intact. In this regard, Plaintiff cites below more than a dozen cases finding that the 2015 Clause is severable. Defendant's Motion cites none finding otherwise. The Supreme Court's strong preference in favor of severability, the passage by Congress of a severability provision governing the TCPA, the fact that the statute was "fully operative" for decades prior to the introduction of the debt-collection exemption, and the general absence of any disagreement among trial and circuit courts regarding severability are all obstacles to going down that path.

Fourth, the McCarran-Ferguson Act does not preclude TCPA liability in this case because Defendant is not an insurance company and it does not sell insurance, and any factual assertion to the contrary is well beyond resolution at the pleading stage.

Last, Defendant argues that this case should be stayed because the Supreme Court is allegedly poised to abolish the TCPA in *Barr v. Political Consultants*, No. 19-631 (U.S.), which concerns a debt-collection exemption that Congress introduced to the law in 2015. However, since the 2015 Clause will likely be severed, the Supreme Court's ruling will not dispose, or provide guidance on the issues in this case.

For these reasons, Defendant's Motion should be denied.

## II.     FACTUAL SUMMARY OF THE CASE

Defendant places unsolicited and unwanted prerecorded telemarketing calls to promote, market and advertise its business and services, including at least twenty-four (24) calls to Plaintiff.

Compl. ¶¶ 13, 18. Plaintiff knows the calls were automated and robotic because of the nature of the sound, the fact that he tried on many occasions to interrupt the recordings to no avail, and the wording of the recordings were always the same. *Id*. ¶ 19.

For example, all calls received on April 26, 2017 were the same in that they all started with a recording that said, in English, "thank you for calling, one of our representatives will be with you shortly"; then, after a several second pause, the call was eventually transferred to a live person who came to the phone and spoke in Spanish. *Id*. ¶¶ 20-21.  On each call Plaintiff asked in Spanish if the representative spoke English, but the representatives always said in Spanish that she did not speak English (all 3 representatives were women). *Id*.

Likewise, on November 8, 2017, Defendant again called Plaintiff's cellular telephone using a prerecorded message. *Id*. ¶ 22. Plaintiff answered the call, heard the prerecorded message and then experienced a long delay before being connected with a live agent who spoke to Plaintiff in Spanish. *Id*.  The live agent stated that she was calling from "Florida Health Solution." Compl. ¶ 22.

All calls made by Defendant and received by Plaintiff were unsolicited, used an artificial or prerecorded voice or message, and were transmitted via an ATDS. *Id*. ¶ 28. This ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and the capacity to store numbers and to dial them without human intervention. Compl. ¶ 28-31.

Because Plaintiff was repeatedly called by Defendant using an artificial or prerecorded voice, and then after a pause or delay connected to a live person in Spanish, despite Plaintiff previously advising Defendant that he spoke English on several occasions, it demonstrates that Defendant used an ATDS to send the subject calls. *Id*. ¶ 32. The impersonal and generic nature of

the prerecorded and artificial voice that Defendant sent to Plaintiff further demonstrates that Defendant used an ATDS to send the subject calls. *Id*. ¶ 33. The calls made to Plaintiff were telemarketing calls for the purpose of marketing, advertising, and promoting Defendant's business and services to Plaintiff. *Id*. ¶¶ 23, 34.

Plaintiff has never signed-up for, and has never used, Defendant's services, and has never had any form of business relationship with Defendant. Compl. ¶ 26.  Plaintiff did not provide his cellular number to Defendant through any medium, nor did Plaintiff consent to receive such unsolicited calls. *Id*. ¶ 25. Defendant knew that it did not have prior express consent to make these calls and knew or should have known that its conduct was a violation of the TCPA. *Id*. ¶¶ 38, 65-66. Because Defendant knew or should have known that Plaintiff and Class Members did not give prior express consent to receive autodialed calls, or calls using an artificial or prerecorded voice, the Court should treble the amount of statutory damages available to Plaintiff and members of the Putative Class pursuant to section 227(b)(3)(C) of the TCPA. *Id*. ¶ 67-68.

### III.   LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff and its allegations of material fact are taken as true."  *Romano v. Motorola, Inc.*, 2007 US Dist. LEXIS 86472, *2 (S.D. Fla. 2007) (citing *McReynolds v. Alabama Dept. of Youth Services,* 204 Fed. Appx. 819, 821 (11th Cir. 2006)).

Rule 8's pleading standard "does not require 'detailed factual allegations.'" *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (citing *Iqbal,* 556 U.S. at 678). A pleading must simply "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Thus, "[a] motion to dismiss should be granted only if 'it appears beyond doubt that the plaintiffs can prove no set of facts in support of their allegations which would entitle them to relief.'" *Id.* (quoting *Roberts v. Florida Power & Light Co.,* 146 F.3d 1305, 1307 (11th Cir. 1998), cert. den., 525 U.S. 1139 (1999)).

"The threshold of sufficiency . . . is exceedingly low." *Del Monte Fresh Produce Co.* v. *Dole Food Co., Inc.,* 136 F.Supp.2d 1271, 1283 (S.D. Fla. 2001). Applying these standards, Defendant's Motion should be denied in its entirety.

### IV. LEGAL ARGUMENT

1) **Plaintiff's ATDS Allegations are Sufficient.**

"Congress enacted the [TCPA] to prevent abusive telephone marketing practices," like the ones utilized by Defendant here. *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 648 (2019). To accomplish this, the TCPA prohibits making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system . . . to any telephone number assigned to a ... cellular telephone service . . . . " 47 U.S.C. § 227(b)(1)(A). Under the TCPA, an ATDS is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

Defendant's Motion does not dispute that the repeated and unwanted calls to Plaintiff were not for emergency purposes and that they were made without Plaintiff's prior express consent.

Here, Defendant merely contends that Plaintiff's ATDS allegations are insufficient to survive dismissal.

However, as demonstrated above, Plaintiff was repeatedly called by Defendant using an artificial or prerecorded voice, and then after a pause or delay was connected to a live person in Spanish, despite Plaintiff previously advising Defendant that he spoke English on several occasions. This demonstrates that Defendant used an ATDS to send the subject calls. The impersonal and generic nature of the prerecorded and artificial voice further demonstrates that Defendant used an ATDS to send the subject calls.

Even post-*Glasser*, "at the pleading stage . . . [Plaintiff] has plausibly alleged a claim with sufficient specificity to survive challenge even under the most restrictive statutory interpretation." *Boger v. Citrix Sys., Inc.*, No. 8:19-CV-01234-PX, 2020 WL 1033566, at *3 (D. Md. Mar. 3, 2020) (finding the plaintiff's ATDS allegations were sufficient while considering *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301 (11th Cir. 2020), including that the complaint alleged "the use of an ATDS," as a "telemarketing strategy," to send "automated calls," and that the plaintiff noticed "a distinctive pause before a sales representative came onto the line," which allows the plausible inference that the defendant used an ATDS); *See also Oliver v. DirecTV, LLC*, No. 14-CV-7794, 2015 WL 1727251, at *3 (N.D. Ill. Apr. 13, 2015) ("[Plaintiff's] allegation regarding the "momentary pause," along with his other allegations regarding Defendant's phone calls, are sufficient to draw a reasonable inference that Defendant used an ATDS . . ."); *Spiess v. CHW Grp., Inc.*, No. 8:19-CV-153-T-30CPT, 2019 WL 2183076, at *1 (M.D. Fla. May 20, 2019) (plaintiff's allegations that there was a "pause" before he "spoke to an individual" were sufficient ATDS allegations at the pleading stage); *Gonzalez v. Ocwen Loan Servicing, LLC*, 5:18-CV-340-OC-30PRL, 2018 WL 4217065, at *7 (M.D. Fla. Sept. 5, 2018) (Moody, J.) (plaintiff's allegation that

6

he "hear[d] a pause when he answered before hearing a voice plus his allegation that that [defendant] used an ATDS—satisf[ied plaintiff's] burden at this stage of the proceedings.").

Likewise, allegations that a call was received with a "generic prerecorded message" followed by an "available representative," and that "receiving a call without a live representative on the line is indicative of an ATDS," are "sufficient allegations that support Plaintiff's claims that the class were autodialed or prerecorded." *Quinn v. Branch Banking & Tr. Co.*, No. 5:19-CV-433-OC-30PRL, 2019 WL 7567812, at *1 (M.D. Fla. Dec. 20, 2019) (M.D. Fla. Jan. 13, 2020)

As in *Boger*, "information regarding the specific features of [Defendant's] dialer system remains within the exclusive province of the defendant and are thus best left for exploration in discovery." *Boger*, 2020 WL 1033566, at *4. "Because the Complaint avers facts that 'permit the court to infer more than the mere possibility of conduct,' the claim [must] proceed." *Id*. (citing *Iqbal*, 556 U.S. at 679); *See also Whitehead v. Ocwen Loan Servicing, LLC,* No. 218CV470FTM99MRM, 2018 WL 5279155, at *4 (M.D. Fla. Oct. 24, 2018) ("There is no way for Plaintiff to know the technological capabilities of the device(s) used to place the calls at issue in this case short of Plaintiff learning that information in discovery."); *see also Zeidel v. Nat'l Gas & Elec., LLC,* No. 18 CV 06792, 2019 WL 2161546, at *4 (N.D. Ill. May 17, 2019) ("Moreover, the difference between a predictive dialer and an ATDS is not readily apparent to a recipient of an automated call. Such a determination requires information about the technical details of the device that the defendant used to make the calls—information that the plaintiff lacks prior to discovery."); *Battaglia v. Quicken Loans, Inc.,* No. 18-CV-1104, 2019 WL 430042, at *2 (W.D.N.Y. Feb. 4, 2019) ("'[I]t would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used' ... such a standard would make

callers 'virtually immune to TCPA claims.'") (quoting *Torres v. Nat'l Enter. Sys., Inc.*, No. 12 C 2267, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012)).

**2) <u>Defendant Used of Artificial or Prerecorded Voice that Imposes an Independent Basis for Liability.</u>**

"The TCPA prohibits calls 'using any automatic telephone dialing system *or* an artificial or prerecorded voice.'" *Brown v. Ocwen Loan Servicing LLC*, No. 8:18-CV-136-T-60AEP, 2019 WL 4221718, at *5 (M.D. Fla. Sept. 5, 2019) (citing 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis in original). "[U]sing recordings to call someone without her [or his] consent is an independent basis for liability under the Act. 47 U.S.C. § 227(b)." *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1313 (11th Cir. 2020)

Therefore, "[w]hether [Defendant's] dialer meets the definition of an ATDS is not dispositive of [Plaintiff's] other TCPA claims. Specifically, in addition to claiming that [Defendant] used an ATDS, [Plaintiff] also claim[s] that [Defendant] used an artificial or prerecorded voice." *Id*. "Calls made using an artificial or prerecorded voice are independently actionable from calls made using an ATDS. *Id*; *See also Johnson v. Capital One Servs., LLC*, No. 18-CV-62058, 2019 WL 4536998, at *5 (S.D. Fla. Sept. 19, 2019) (confirming that a claim regarding use of artificial or prerecorded voice proceeds even if the claim premised upon use of ATDS fails); *See also Whitehead v. Ocwen Loan Servicing, LLC*, No. 2:18-cv-470-FtM-99MRM, 2018 WL 5279155, at *4 (M.D. Fla. Oct. 24, 2018) (finding that a claim regarding use of artificial or prerecorded voice proceeds even if the claim premised upon use of ATDS fails).

In *Brown*, the court denied the defendant's summary judgment motion because there were disputed issues regarding how many calls were "*placed* using an artificial or prerecorded voice," confirming that a "prerecorded or artificial voice message asking [the plaintiffs] to hold for a representative" is actionable under the TCPA). *Brown*, 2019 WL 4221718, at *5.

As shown above, the fact that Plaintiff was ultimately transferred to a live person is not dispositive of whether the calls to Plaintiff were *placed* using an ADTS <u>or</u> an artificial or prerecorded voice.

### 3) <u>No Court Has Ever Found the TCPA Entirely Unconstitutional, and The Supreme Court is Not Going to Reject the Unanimous Ruling of Every Single Court to Take Up the Severability Issue.</u>

In *William P. Barr v. American Association of Political Consultants, Inc., et. al.* ("AAPC"), 923 F.3d 159 (4th Cir. 2019)*,* the Fourth Circuit took up three issues: (1) the appropriate level of scrutiny under which to examine the 2015 Clause, (2) whether the 2015 Clause "survives the applicable level of scrutiny," and (3) if not, "whether to strike the automated call ban in its entirety, or whether to simply sever the flawed exemption therefrom." 923 F.3d at 165. Ultimately, the court found that strict scrutiny applied and that the 2015 Clause was unconstitutional, but that it was severable and therefore did not mandate striking the automated call ban. *Id.* at 161. A petition for certiorari was filed and granted. *See* --- S. Ct. ---, 2020 WL 113070 (Jan. 10, 2020).

The decisions to date regarding the 2015 Clause make clear that the real issue to be decided by the Supreme Court is the validity of the 2015 Clause itself, while the severability of the remainder of the statute is not legitimately in question.

Courts have reached varying conclusions as to the constitutionality of the 2015 Clause. *Compare Greenley v. Laborers' Int'l Union of N. Am.,* 271 F. Supp. 3d 1128 (D. Minn. 2017) and *Mejia v. Time Warner Cable, Inc.*, 2017 WL 3278926 (S.D.N.Y. Aug. 1, 2017) (finding that 2015 Clause was constitutional), *with AAPC*, 923 F.3d 159 (4th Cir. 2019); *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019) (finding that 2015 Clause was unconstitutional). Indeed, the *AAPC* case itself was an appeal to the Fourth Circuit from a district court's opinion finding that the 2015 Clause *was* constitutional. *See* 923 F.3d at 161 ("The district court … ruled that it does not violate

9

the Free Speech Clause."). Thus, the Supreme Court granted certiorari in order to provide guidance on this dispute.

Conversely, the argument that the 2015 Clause invalidates the entirety of the TCPA is a throw-away argument that has never worked in any court, ever.

Every time this issue has been taken up, courts found that the 2015 clause was severable and therefore could not invalidate the rest of the statute. *See AAPC*, 923 F.3d at 161 ("[W]e are satisfied to sever the flawed exemption from the automated call ban"); *Rosenberg v. Loandepot.com LLC,* 2020 WL 409634, * 7 (D. Mass. Jan. 24, 2020) ("Given the severability clause, the ancillary nature of the provision and, for broadly similar reasons discussed by the Fourth an Ninth Circuits, this Court concludes that the unconstitutional government debt collection exception is severable"); *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1157 (9th Cir. 2019) ("We reject Facebook's challenge that the TCPA as a whole is facially unconstitutional, but we sever the debt collection exception as violative of the First Amendment."); *Edwards v. Conn's, Inc.*, 2019 WL 4731942, at *1 (D. Nev. Sept. 27, 2019) ("Moving forward, all claims in this case will continue under the pre-amendment TCPA, which the Ninth Circuit has held to be content-neutral and consistent with the First Amendment."); *Katz*, 2019 WL 4645524, at *8 ("[T]he Court concludes that the government debt-collection exception of the TCPA is severable. . . . Therefore, the claims in this case are unaffected by the debt-collection exception's unconstitutionality.); *Woods v. Santander Consumer USA Inc.*, 2017 WL 1178003, at *3 n.6 (N.D. Ala. Mar. 30, 2017) ("Even if the Court were to … find that the government-debt exception is invalid, the Court would not deem the entire TCPA to be unconstitutional because the [government-debt] exception [is] severable from the remainder of the statute." (internal quotation marks and citation omitted; alterations in original)); *Sliwa v. Bright House Networks, LLC*, No. 2:16-cv-235, 2018 WL

1531913, at *6 (M.D. Fla. Mar. 29, 2018) ("There can be little doubt that, upon a finding that the Government–Debt Exception violates the First Amendment, the proper course would be to sever that clause from the rest of Section 227(b)(1)(A)(iii)."); *Wijensinha v. Bluegreen Vacations Unlimited, Inc.*, 2019 WL 3409487, at 6 (S.D. Fla. Apr. 3, 2019) ("[I]f the amended TCPA were deemed unconstitutional, a finding of severability would cure the constitutional defect and preclude invalidation of the entire statute."); *Parker v. Portfolio Recovery Assocs., LLC*, 2019 WL 4149436, at *2 (C.D. Cal. July 11, 2019) ("[S]pecific evidence of the legislature's preference for retaining the valid TCPA provision is provided.").

Even though this issue has been taken up by courts repeatedly, Defendant cites no authority finding that the 2015 Clause could invalidate the entire statute. Instead, it cites a group of cases generally finding, in the context of other statutes, that invalidation of a clause may lead to invalidation of an entire statute. Defendant's cases are inapplicable because they do not address the TCPA or the 2015 Clause.

There is good reason why every decision has come down on the same side. Congress made its intent very clear: "If any provision of this chapter [containing the TCPA] . . . is held invalid the remainder . . . shall not be affected thereby." 47 U.S.C. § 608. "While not dispositive, this unambiguous language endorsing severability relieves us of a counterfactual inquiry as to congressional intend and creates a presumption of severability absent 'strong evidence that Congress intended otherwise.'" *Duguid*, 926 F.3d at 1156 (quoting *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686 (1987)). "History reaffirms what Congress said. The TCPA has been 'fully operative' for more than two decades. Then, with little fanfare, Congress appended the comparatively modest debt-collection exception as a small portion of the 2015 budget bill. The

newly enacted exception did not suddenly and silently become so integral to the TCPA that the statute could not function without it." *Id.* at 1156-57 (internal quotations omitted).

So, while *AAPC* is going to the Supreme Court and the argument by Defendant is technically being advanced, the fact that other courts have repeatedly come down on the same side of this issue strongly suggests that the Supreme Court has accepted the case to rule on the constitutionality of the 2015 Clause – not to undo the well-established holding about severability reached by every other court. Moreover, because the allegations of this case do not involve anything addressed in the 2015 Clause, the Supreme Court's decision is certain to be immaterial to this litigation.

**4) <u>The McCarran-Ferguson Act Does Not Preclude TCPA Liability</u>**

Defendant's argument lives and dies with its assertions that Defendant's conduct involves "telemarketing relating to the sale of insurance" and that it is an "expressly exempted insurance compan[y.]" Def. Mot. at p. 12. While Defendant's licensure (ie: whether it is a licensed insurance broker, agent, customer representative, or solicitor) and the particular product Defendant sought to solicit Plaintiff to purchase (ie: whether it is health insurance) are factual issues that cannot be resolved at the pleading stage, both assertions are undermined by Defendant's admissions on its company website.

Defendant is a "Prepaid Health Clinic & Discount Plan Organization."[1]  As a Prepaid Health Clinic, members pre-pay to receive "healthcare services . . . from those health care providers who have contracted with the discount plan organization." [2] As a Discount Plan Organization, Defendant makes clear that it "is *not an insurance*."[3]

---

1. Florida Health Solution, https://www.floridahealthsolution.com/ (last visited March 16, 2020)
2. *Id*.
3. *Id*. (emphasis added).

So, Defendant is neither an insurance company, nor does it sell insurance – Defendant's suggestion otherwise is misleading at best.

Last, the Southern District of Florida has held that the McCarran-Ferguson Act does not preempt the TCPA's reach in the context of deceptive or misleading advertising because it does not impair, supersedes or displace Florida consumer protection laws – the same is true here. *See Envtl. Progress, Inc. v. Metro. Life Ins. Co.*, No. 12-CV-80907, 2013 WL 12107635, at *1 (S.D. Fla. Apr. 4, 2013) (allowing a TCPA fax case to proceed against MetLife Insurance Company); *See also C-Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679, 692 (S.D. Fla. 2014) (granting class certification against an insurance company for TCPA violations).

**5)  Plaintiff and Class Members will be Prejudiced by a Stay**

There is no question that Plaintiff and Class Members will be prejudiced by a stay. Defendant's calls to Class Members occurred throughout the past four years. Prompt discovery is needed to obtain and preserve Defendant's call records, and to identify witnesses and secure testimony regarding the dialing system used and persons called. Additionally, to the extent third-party vendors were utilized to initiate calls on behalf of Defendant, those vendors will likely possess important documents and call details relevant to ascertaining the class. The vendor and witnesses, to the extent they exist, should be disclosed now so that Plaintiff may preserve that crucial evidence to support his case. Depending on records available from Defendant and any yet to be identified third-parties, Class Members may be called upon to corroborate those records or self-identify in order to recover monies owed to them. Further delay of this action therefore will directly benefit Defendant and prejudice Class Members. As more time passes, people will pass away, change the telephone numbers or relocate, and memories may fade. Moreover, in the event any necessary third parties must be joined in the litigation, it is unduly prejudicial to Plaintiff and

Class Members for Defendant to hold the keys to that information as any applicable statutes of limitations approach.

Defendant's hopes that the Supreme Court will invalidate the entire TCPA, rather than simply sever the 2015 Clause, is very unlikely and at odds with the considerable authority holding otherwise. Given the above points about severability, however the Supreme Court resolves *AAPC* is not likely to have any bearing whatsoever on the issues in this case because this case has nothing to do with debt collection or the debt-collection exemption

Those who systematically violate the TCPA
often seek to invalidate the statute and escape liability. While certain challenges to the statute may merit stays of litigation, this is not such a case, since
the Supreme Court's decision is unlikely to impact this litigation. Defendant has not demonstrated that it will face hardship or inequity if this case proceeds.

## V.   ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE

In the event the Court finds that Plaintiff's claims are insufficiently pleaded, dismissal should be without prejudice and with leave to amend. Pursuant to Fed. R. Civ. P. 15(a), leave to amend should "'be freely given when justice so requires;' this mandate is to be heeded."[4] Based on the generous nature of granting leave to amend, it is appropriate in this matter to allow for any dismissal to be without prejudice. The standard is simply that the court must be able to "conceive of facts" that would make the claim a viable one. Here, it is conceivable that if a dismissal is

---

4.   *Foman v. Davis*, 371 U.S. 178, 182 (U.S. 1962) (citing 3 Moore, Federal Practice (2d ed. 1948), paras. 15.08, 15.10); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 701 (9th Cir. 1988). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.,—the leave sought should, as the rules require, be 'freely given.'" *Foman*, 371 U.S. at 182 (1962); *See also Espey v. Wainwright*, 734 F. 2d 748 (11th Cir. 1984).

granted with respect to Plaintiffs' claims, that amendment would be not only conceivable, but very probable.

## V. CONCLUSION

Based on the foregoing, Defendant's Motion should be denied so they case may proceed with discovery.

DATED: March 23, 2020          Respectfully Submitted,

>By: */s/ Joshua H. Eggnatz*
>Joshua H. Eggnatz, Esq. (FBN: 0067926)
>E-mail: JEggnatz@JusticeEarned.com
>EGGNATZ | PASCUCCI
>7450 Griffin Road, Suite 230
>Davie, FL 33314
>Telephone: 954-889-3359
>Facsimile: 954-889-5913
>
>Seth M. Lehrman, Esq. (FBN: 132896)
>E-mail: seth@epllc.com
>EDWARDS POTTINGER LLC.
>425 North Andrews Avenue, Suite 2
>Fort Lauderdale, FL 33301
>Telephone: 954-524-2820
>Facsimile: 954-524-2822
>
>
>*Counsel for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was served via CM/ECF this 23rd day of March, 2020, to the following on the service list below:

Jeffrey B. Pertnoy (FBN 91939)
E-mail: jeffrey.pertnoy@akerman.com
Lawrence D. Silverman (FBN 7160)
E-mail: lawrence.silverman@akerman.com
AKERMAN LLP
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100

15

Miami, Florida 33131
Telephone: 305-374-5600
Facsimile: 305-374-5095

*Counsel for Defendant*