**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
*Case No. 19-cv-24013-DPG*

ROBERT DOYLE, individually and on
behalf of all others similarly situated,

    Plaintiff,

vs.

FLORIDA HEALTH SOLUTION, CORP.,
a Florida Corporation, and MOBILITY
TECHNOLOGIES USA, CORP., a Florida
Corporation

    Defendants.
_____/

**DEFENDANT'S MOTION TO DISMISS**
**PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendant, Florida Health Solution, Corp. ("**Florida Health**") through its undersigned counsel moves to dismiss the Second Amended Class Action Complaint ("**Second Amended Complaint**"; ECF No. 40) filed by Plaintiff Robert Doyle ("**Plaintiff**"), and states as follows:

**I.     INTRODUCTION**

Plaintiff's Amended Complaint alleges that Florida Health violated the Telephone Consumer Protection Act, 47 U.S.C. § 227(b) (the "**TCPA**") by placing calls to Plaintiff using an automatic telephone dialing system ("**ATDS**") or an artificial and/or prerecorded voice.

The Eleventh Circuit recently confirmed that in order for a dialing system to constitute an ATDS, it <u>must</u> have the capacity to generate random or sequential phone numbers. *See Glasser v. Hilton Grand Vacations Co., LLC*, No. 18-14499, No. 18-14586, 2020 WL 415811 (11th Cir. Jan. 27, 2020). *Glasser* also held that dialing from a list of numbers, previously prepared by a caller, does not violate the TCPA.

1

Plaintiff's allegations of ATDS usage in the Second Amended Complaint are still bare and merely mimic the statutory language. The Second Amended Complaint still contains no *real* factual support for its allegations of random or sequential number generation – a far cry from what *Glasser* requires. *See* Am. Compl., ¶ 29 (alleging, only "upon information and belief," that the unnamed and unidentified ATDS "us[es] a random or sequential number generator"); ¶ 31 (alleging only "upon information and belief," that Defendant used hardware and software that "have the capacity to generate or store random or sequential numbers or to dial sequentially or randomly"). The pleading of these conclusions – not facts – are insufficient to state a proper TCPA claim.

The Amended Complaint also lacks support for the allegation (again, only alleging "on information and belief") that the unidentified device, allegedly an ATDS, "has the capacity to store numbers and to dial numbers without human intervention." (Amended Complaint ¶ 30) Calling from a list of numbers is not a violation of the TCPA. (*See Glasser*, 2020 WL 415811, at *7). Taking Plaintiff's allegation as true in this regard, there is still no TCPA claim.

Plaintiff's additional allegations allegedly supporting the use of an ATDS (the "impersonal and generic nature" of the calls (Amended. Complaint at. ¶ 33)) and that the calls were "robotic" (*Id.* ¶ 19)) similarly do not support that Defendant used an ATDS because, under *Glasser*, the relevant inquiry is random or sequential number generation – not the pre-*Glasser* indicia of ATDS usage (which Plaintiff seems to rely on here). Thus, Plaintiff's allegations of ATDS usage fall short, and do not state a proper claim for relief.

In addition to these threshold pleading deficiencies, the Complaint should also be dismissed for <u>five</u> additional reasons.

**First**, Plaintiff's conclusory allegation that the calls at issue were for marketing,

advertising, or telemarketing purposes is insufficient. Plaintiff provides no actual details regarding the calls, other than the boilerplate assertion that they were for marketing purposes.

**Second**, Plaintiff's own allegations undermine his claims. Plaintiff admits that, for each alleged call at issue, he spoke to a live person on the other end of the phone, which is fatal to his claims that the calls were made using an ATDS or were entirely prerecorded. *See* Am. Compl., ¶¶ 20-22 (admitting that Plaintiff spoke to a "live" person).

**Third**, the autodialing restrictions of the TCPA (on which Plaintiff's claims are based) violate the First Amendment to the United States Constitution.

**Fourth**, the McCarran-Ferguson Act, 15 U.S.C. § 1012, *et seq.*, precludes the applicability of the TCPA to Florida Health as a matter of law.

**Fifth**, Plaintiff has not pled facts supporting that a willful and knowing violation of the TCPA occurred.

## II.     RELEVANT FACTUAL ALLEGATIONS

Plaintiff's allegations, even taken as true, are insufficient to state a proper cause of action. Plaintiff alleges in a conclusory fashion that, without his consent, Florida Health used an ATDS to call him. Plaintiff pleads no detailed, factual allegations regarding random or sequential number generation. *See* Am. Compl., ¶¶ 28-33. Plaintiff also inadvertently admits that there were no violations of the TCPA here, because he avers that, for each alleged call at issue, he spoke to a live person on the other end of the phone. *See* Am. Compl., ¶¶ 21-22, 32 (admitting that he spoke to a "live" person).

Aside from these conclusory allegations, the rest of the Amended Complaint consists mainly of irrelevant legal argument (from other jurisdiction) and generic class allegations. Perhaps most telling is that the Amended Complaint does not contain any details regarding the content of

3

the calls, aside from a single generic allegation the calls were "for the purpose of marketing, advertising, and promoting Defendant's business and services." *See* Am. Compl., ¶ 34. This is simply not enough to state a claim.

### III. MEMORANDUM OF LAW

#### A. Plaintiff's Complaint is Subject to Dismissal

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted." A complaint must allege enough facts "to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 570 (2007). The Court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

#### 1. Plaintiff's Boilerplate ATDS Allegations Are Insufficient

"To sufficiently plead the ATDS element of a TCPA claim, a plaintiff may not merely recite the statutory elements of the use of an ATDS or prerecorded voice without alleging additional facts to support those facts." *Adams v. Ocwen Loan Servicing, LLC*, 366 F. Supp. 3d 1350, 1355-56 (S.D. Fla. 2018) (Dimitrouleas, J.); *Turizo v. Jiffy Lube Int'l Inc.*, No. 19-cv-61140, 2019 WL 4737696 (S.D. Fla. Sept. 27, 2019) (Bloom, J.) (holding that complaint lacked detail regarding ATDS usage and allegations were "insufficient to plausibly allege the use of an ATDS"); *Simon v. Ultimate Fitness Grp., LLC*, No. 19-cv-890, 2019 WL 4382204, at *7 (S.D.N.Y. Aug. 19, 2019) (requiring factual allegations that are "plausible indicia of an ATDS"); *Sterling v. Securus Techs., Inc.*, No. 3:18-CV-1310 (VAB), 2019 WL 3387043, at *1 (D. Conn. July 26, 2019) ("Plaintiffs must do more than simply parrot the statutory language."); *Douek v. Bank of Am. Corp.*, No. 17-2313, 2017 WL 3835700, at *2 (D.N.J. Sept. 1, 2017) ("[A] bare allegation that Plaintiffs used an ATDS is not enough").

4

Plaintiff's allegations are insufficient under *Glasser* to state a claim because there are no facts pled supporting that a random or sequential number generator was used. The Amended Complaint also lacks support for the allegation that the unidentified ATDS has the capacity to store numbers and dial them. Of note, even if this allegation were true, in the Eleventh Circuit, calling from a list of numbers is not a TCPA violation. *See Glasser*, 2020 WL 415811, at *7. Plaintiff has simply not pled enough detail to state a claim. To the extent Plaintiff's claims are based on the use of an ATDS, they should be dismissed.

### 2. Plaintiff's Conclusory Allegations that Florida Health Willfully and/or Knowingly Violated the TCPA Should be Dismissed and/or Stricken

Plaintiff also alleges that Florida Health willfully and knowingly violated the TCPA. There are simply no facts pled supporting that Florida Health's actions, if proven as alleged, were willful or knowing violations of the TCPA. *See McCullough v. Maximum Title Loans LLC*, No. CV-19-00717-PHX-JJT, 2019 WL 3933754, at *3 (D. Ariz. Aug. 20, 2019) (dismissing and striking request for treble damages for willful and knowing violation of the TCPA for insufficient pleading, and finding that the facts supporting an inference that the calls at issue knowingly or willfully violated the TCPA must be pleaded specifically, and threadbare allegations are insufficient).

### 3. Plaintiff's Failure to Plead Details About the Content of the Alleged Calls is Fatal to His Claims

In a single paragraph in his Amended Complaint, Plaintiff alleges that the calls at issue were for marketing, advertising or telemarketing purposes. *See* Am. Compl., ¶ 34. Plaintiff's Complaint is otherwise silent on the content of the calls at issue. It is improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Plaintiff's failure to provide detail regarding the content of the calls is significant because

the level of consent that a caller must obtain from the called party under the TCPA depends entirely on the nature and purpose of the call. The Federal Communications Commission ("**FCC**") has long interpreted the TCPA to embody the principle that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8769 (1992). That is, in the FCC's view, the very act of turning over one's phone number demonstrates a willingness to be called about certain things, barring instructions to the contrary. *Id.*

Thus, whether the calls at issue were actually for marketing, advertising or telemarketing purposes – rather than some other purpose – then the consent standard changes. The problem here is that Plaintiff has not sufficiently pled which consent standard applies, due to his failure to allege the nature and scope of the calls' content. Indeed, FCC orders and rulings show that transactional context matters in determining the scope of a consumer's consent to contact. *Id; see also Brooks v. The Kroger Co.*, No. 19-cv-00106, 2019 WL 3778675 (S.D. Cal. Aug. 12, 2019) (dismissing complaint where plaintiff did not allege that "the calls were done for marketing purposes" and thus failed to state a cause of action); *Williams-Diggins v. Republic Services*, No. 18-cv-2313, 2019 WL 5394022, at *2 (N.D. Ohio Apr. 25, 2019) (dismissing TCPA complaint because it did not allege that telephone solicitations occurred, "[t]hus, the TCPA does not apply").

### 4. Plaintiff's Admission That He Spoke to a Live Person is Fatal to His Claims

The TCPA prohibits the making of "any call" other than an emergency call "using an automatic telephone dialing system or an artificial or prerecorded voice" to "any telephone number assigned to a ... cellular telephone service" without the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). Plaintiff's own allegations undermine his claims.

6

Plaintiff admits that, for each alleged call at issue, he spoke to a live person on the other end of the phone. *See* Am. Compl., ¶¶ 20-22. Taking Plaintiff's allegations as true, all calls at issue were live calls, with a human on both ends of the phone.

These facts do not give rise to TCPA liability because only calls which are entirely pre-recorded and lack any human interaction trigger the TCPA's prerecorded call restrictions.[1] *See e.g., Moser v. F.C.C.,* 46 F.3d 970 (9th Cir. 1995). In fact, the FCC's own brief in *Moser* conceded that Congress had granted greater latitude where there was interaction between humans than where there were only machine-based messages. *See* Brief for Appellant FCC, 1993 WL 13101270, at *10. The FCC noted that "the demarcation drawn by the statute, which gives greater protection to human exchange than prerecorded announcements," was further supported by state experiences, favorably citing a finding that "the distinction between live and prerecorded calls 'addresses the inescapable fact that machines cannot ascertain the propriety of proceeding with a message.'" *Id.*; *see also* Reply Brief for Appellant FCC, 1994 WL 16014724, p. 4 ("In contrast,..., an automated message, 'cannot interact with the customer except in preprogrammed ways' and does 'not allow the caller to' ...ask questions, register complaints, or ask not to be called again."). Here, Plaintiff admits he spoke to a live person during all of the calls at issue. Dismissal is therefore required.

"Laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference." *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S.

---

[1] This exact issue – whether a prerecorded message used during a live call, and tangentially, whether a call that is not *entirely* prerecorded can violate the TCPA – is pending before the FCC. *See* Petition for Expedited Declaratory Ruling Regarding the Application of 47 U.S.C. § 227(b)(1)(B) of the Telephone Consumer Protective Act, in *In the Matter of Yodel Technologies LLC's Petition for Expedited Declaratory Ruling*, CG Docket No. 02-278 (filed Sept. 13, 2019); *see also* https://www.fcc.gov/ecfs/filing/1091320379447, last visited October 30, 2020.

7

622, 658 (1994). The TCPA's automated call restrictions (the "**Restrictions**") draw impermissible lines based on the content of the call and who is making the call.

The Restrictions, generally, prohibit calls to numbers assigned to a cell phone using an ATDS or an artificial or prerecorded voice, without consent. But, in 2015, the statute was amended to make a content-based exemption for calls "made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A) & (A)(iii). Coverage under the Restrictions hinges on the content of the message, as calls to collect a government-backed debt and for emergency purposes are permissible, but calls for other purposes, made by other callers, violate the law.

Two Circuit Courts of Appeal have held that the certain of the Restrictions are unconstitutional and have severed the unconstitutional provision as the proper remedy. *See Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F. 3d 159 (4th Cir. 2019), *cert granted sub nom Barr v. Political Consultants*, No. 19-631, 2020 WL 113070 (U.S. Jan. 10, 2020) (hereinafter "*AAPC*") and *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019). Both courts found that the "government backed debt exemption" was an unconstitutional content-based exception to the TCPA's restrictions on free speech, which did not survive strict scrutiny. Both Courts severed the exemption, allowing the remainder of the TCPA to stand. Relying on its own precedent, the Supreme Court will likely find, as this Court should find, that the exemption is not severable. Rather, the entirety of the autodialing Restrictions of TCPA are unconstitutional.

The Supreme Court has a history of striking down the entirety of these types of unconstitutional provisions, not the exception itself. For example, in *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2224 (2015), the Court struck down a city's sign code in its entirety. The code prohibited outdoor signs without a permit but exempted certain categories of signs from the

permitting requirement, depending on sign's content. The Court found the entirety of the sign code unconstitutional because eliminating the exceptions would have abridged more speech. *Id.*

*Reed* is not alone. The Supreme Court has a proven track record of striking down the entirety of laws that abridge free speech, rather than striking down the only the narrow exceptions to those laws. *See, e.g., Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 805 (2011); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 563-64, 580 (2011); *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 190 (1999); *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 488-91 (1995); *City of Ladue v. Gilleo*, 512 U.S. 43, 53 (1994); *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 430-31 (1993); *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 233 (1987); *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 592 (1983); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 795 (1978).

Accordingly, this Court should find that the TCPA's autodialing restrictions – in their entirety – are unconstitutional, necessitating the dismissal of Plaintiff's Amended Complaint.

### 5. **The McCarran-Ferguson Act Precludes Liability**

Plaintiff alleges that Florida Health "is in the business of selling credit health savings and/or health insurance policies." *See* Am. Compl., ¶ 12. The McCarran-Ferguson Act, 15 U.S.C. § 1011, *et seq.*, precludes the applicability of the TCPA to Defendant Florida Health. The McCarran-Ferguson Act provides that "the business of insurance … shall be subject to the laws of the … States which relate to the regulation … of such business." 15 U.S.C. § 1012(a). As such, "[n]o Act of Congress [including the TCPA] shall be construed to invalidate, impair, or supersede any law by any State for the purpose of regulating the business of insurance… unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). The McCarran-Ferguson Act therefore reverses the general rule of federal pre-emption by imposing a rule that a state law enacted for the

9

purpose of regulating the "business of insurance" does not yield to a conflicting federal statute unless such statute specifically relates to the "business of insurance". *US Dep't of Treasury v. Fabe*, 508 U.S. 491, 491-92 (1993).

A four-pronged test is used to determine whether a state law regulating insurance pre-empts a federal law such as the TCPA by operation of the McCarran-Ferguson Act:

> The initial question is whether [the TCPA] "specifically relates to the business of insurance" within the meaning of 15 U.S.C. § 1012(b). If it does, the McCarran Act defense is automatically defeated and [the] inquiry is at an end. If it does not, then [the court] must decide whether [Florida Health's telemarketing] constitutes the "business of insurance" for purposes of § 1012(b). If those activities are not part of the business of insurance, [the TCPA] would apply. If they are a part of such business, we must then determine whether [Florida] has "enacted by any [law] ... for the purpose of regulating" such activities. If [Florida] has not done so, [TCPA] would apply. If it has, we must finally decide whether [TCPA] would "invalidate, impair, or supersede" such state law.

*Cochran v. Paco Inc.*, 606 F.2d 460, 464 (5th Cir. 1979) (citations omitted).[2]

Thus, the relevant issues for the Court in determining the applicability of the McCarran-Ferguson Act here are: (i) whether the TCPA "specifically relates" to the business of insurance; (ii) whether telemarketing calls and advertising by insurance companies constitute the business of insurance; (iii) whether Florida has enacted laws "for the purpose of regulating" the business of insurance; and (iv) whether the TCPA "impairs, invalidates, or supersedes" Florida law regulating the business of insurance. All factors warrant a finding that the TCPA does not apply.

"Unless a federal law *specifically relates* to the business of insurance, it will not be applied when it "invalidates, impairs, or supersedes" a state law "enacted for the purpose of regulating the business of insurance." *Sabo v. Metro. Life Ins. Co.*, 137 F.3d 185, 190 (3d Cir. 1998) (emphasis

---

[2] Pursuant to *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981), *Cochran* is binding on this Court.

added). The TCPA, on its face, does not "specifically relate" to the business of insurance. Accordingly, the first prong of the analysis is satisfied.

The second prong, whether telemarketing calls and advertising by insurance companies constitute the "business of insurance," also weights in favor of Defendant Florida Health. Specifically, the Supreme Court has held that "[t]he selling and advertising of [insurance] policies, … [is] within the scope of the [McCarran-Ferguson Act]." *SEC v. Nat'l Sec., Inc.*, 393 U.S. 453, 460 (1969).

The third prong is satisfied because Florida has enacted laws "for the purpose of regulating" the business of insurance, and more specifically, telemarketing relating the to the sale of insurance. The Florida Telemarketing Act, codified at Sections 501.601 – 501.626, Florida Statutes, regulates telemarketing in the State of Florida. Notably, the Florida Telemarketing Act:

> ***does not apply*** [to a]ny licensed insurance broker, agent, customer representative, or solicitor when soliciting within the scope of his or her license. As used in this section, "licensed insurance broker, agent, customer representative, or solicitor" means any insurance broker, agent, customer representative, or solicitor licensed by an official or agency of this state or of any state of the United States.

Section 501.604(8), Florida Statutes (emphasis added). Florida Health is an entity covered by Section 501.604(8), as Plaintiff admits. *See* Am. Compl., ¶ 12.

The Supreme Court has explained that state laws possessing the end, intention or aim of adjusting, regulating, managing or controlling the business of insurance are within the broad category of laws enacted for the purpose of regulating the business of insurance. *Fabe*, 508 U.S. at 505. The Florida Telemarketing Act clearly regulates telemarketing and advertising and has expressly exempted insurance companies (including by Plaintiff's own admission, Florida Health) from those restrictions. Accordingly, the third prong of the analysis is met.

The fourth prong is also met. The TCPA directly conflicts with Florida laws enacted for the purpose of regulating the business of insurance as it pertains to insurance companies' telemarketing and advertising efforts. The TCPA, on one hand, *prohibits* unsolicited insurance advertising by telephone, while the Florida Telemarketing Act, on the other, *permits* insurance advertising and solicitation by telephone (by exempting insurance companies). Accordingly, the TCPA "impairs, invalidates or supersedes" state laws regulating the business of insurance.

Because all four factors are met, the McCarran-Ferguson Act preempts the TCPA's applicability to Florida Health here.

**WHEREFORE**, the Defendant Florida Health Solution Corp. respectfully requests that this Honorable Court enter an Order dismissing Plaintiff's claims, and granting Defendant such further and additional relief as the Court deems just and proper.

Date: November 1st, 2020          Respectfully submitted,

/s/ **Luis Fernandez**
**Luis Fernandez, Esq.**
**Attorney for Defendant**
**Florida Health Solution, Corp.**

### CERTIFICATE OF SERVICE

**I hereby certify that a true and correct copy of the Defendant's Motion to Dismiss was served via the Court's electronic System to all parties of record on this 1st day of November, 2020.**

/s/ **Luis Fernandez**
**Luis Fernandez P.A.**
**Attorney for Defendant**
**Florida Health Solution Corp.**
**2250 SW 3rd Avenue Suite 303**
**Miami, FL 33129**
**305-8545955**
**Lfernandezlaw@aol.com**